1  SCHLEY LOOK GUTHRIE & LOCKER LLP
2  Brett Locker (CA Bar No. 173083)
   blocker@slgl-law.com
3  311 East Carrillo Street, Suite D
   Santa Barbara, California 93101
   Telephone: 805.963.4929
4  Facsimile: 805.456.2992

5  Attorneys for Plaintiff,
6  Turn Key Wine Brands LLC

7
8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11 TURN KEY WINE BRANDS LLC,          Case No.:  2:16-cv-9088

12          Plaintiff,                 **COMPLAINT FOR:**

13 v.                                  **1. Breach of Contract;**

14
   CUSTOMVINE CORP.; PENROSE          **2. Trademark Infringement (15**
15 HILL, LIMITED; TIME, INC.; KEVIN       **U.S.C. § 1114(1)(a));**
   BOYER; L18 WINES, LLC; L18
16 HOLDINGS, INC.; R B WINE           **3. Trademark Counterfeiting (15**
   ASSOCIATES, LLC; A W DIRECT,           **U.S.C. § 1114(1)(b));**
17 LLC; SPELLETICH FAMILY, INC.;
   GREGG & GREGG, INC.; PLATA         **4. Unfair Competition (15 U.S.C. §**
18 WINE PARTNERS, LLC; and DOES           **1125(a)(1)(A));**
19 1-10, inclusive,
                                       **5. False Advertising (Cal. Business &**
20          Defendants.                    **Professions Code § 17500);**

21                                     **6. Contributory Trademark**
22                                         **Infringement;**

23                                     **7. Vicarious Trademark**
24                                         **Infringement**

25                                     **8. Vicarious Liability**

26
27                                     **DEMAND FOR JURY TRIAL**
28

                                      1
   COMPLAINT RE BREACH OF CONTRACT, TRADEMARK INFRINGEMENT AND
   COUNTERFEITING, FALSE ADVERTISING, VICARIOUS INFRINGEMENT AND LIABILITY

# I.

## JURISDICTION AND VENUE

1.     This Court has original jurisdiction over this dispute under 28 U.S.C. §§ 1338 (patents, trademarks, unfair competition) and 1367(a) (supplemental jurisdiction).

2.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District, and because consumers in this district are likely to be confused by the challenged goods.

# II.

## PARTIES

3.     Plaintiff Turn Key Wine Brands LLC ("plaintiff" or "Turn Key"), is a limited liability company organized under the laws of the State of California, with its principal place of business in Santa Barbara, California.

4.     Defendant CustomVine Corp. ("CustomVine") is a corporation, incorporated under the laws of the State of Delaware, with its principal place of business in Walnut Creek, California.

5.     Defendant Penrose Hill, Limited ("Penrose Hill"), is a corporation, incorporated under the laws of the State of Delaware, with its principal place of business in New York City. Penrose Hill conducts business, including but not limited to the production of wines, within the State of California. Its principal place of business in California is in Healdsburg, Sonoma County. According to a Form D filing with the SEC dated August 3, 2015, Penrose Hill was formerly known as Penrose Lane Limited. In this Complaint, all references to "Penrose Hill" include "Penrose Lane Limited".

6.     Defendant Time, Inc. ("Time") is a corporation incorporated under the laws of the State of Delaware, with its principal place of business in the State of New York. Time is the owner of a wine club called "Firstleaf." According to

the Firstleaf website, *www.firstleaf.club*, defendant Penrose Hill operates the Firstleaf wine club as Time's licensee. Firstleaf advertises and sells wines to members in the State of California.

7. Defendant Kevin Boyer is an individual residing in Walnut Creek, California. Mr. Boyer is a founder and the CEO of defendant CustomVine, and is a member of the advisory board of defendant Penrose Hill.

8. Defendant RB Wine Associates, LLC, doing business as "Rack & Riddle" ("Rack & Riddle") is a limited liability company organized under the laws of the State of California with its principal place of business in Sonoma County, California.

9. Defendant A W Direct, LLC, doing business as "TR Wines", "L18 Wines" and "Lot18 Wines" ("A W Direct") is a limited liability company organized under the laws of the State of Delaware, with its principal place of business in Westlake Village, California.

10. Defendant Spelletich Family, Inc., doing business as "Lot 18 Wines" and "TR Wines" ("Spelletich") is a corporation organized under the laws of the State of California, with its principal place of business in Napa County, California.

11. Defendant Greg & Greg, Inc., doing business as "Owl Ridge Wine Services" and "West County Wines" ("Greg & Greg"), is a corporation incorporated under the laws of the State of California, with its principal place of business in Sonoma County, California.

12. Defendant Plata Wine Partners, LLC ("Plata Wine Partners") is a limited liability company organized under the laws of the State of California, with its principal place of business in Napa County, California.

13. Defendant L18 Wines, LLC ("L18") is a limited liability company organized under the laws of the State of California, with its principal place of business in the State of New York. The website operated by defendant L18, *www.lot18.com*, as published on the date that this Complaint was prepared,

1  identifies L18 Holdings, Inc. as the owner of that website. According to the
2  California Secretary of State, L18 Holdings, Inc. is or was a corporation organized
3  under the laws of the State of Delaware that forfeited its right to conduct business
4  in California, and L18 Holdings, Inc. had an identical entity address as that of
5  defendant L18 Wines, LLC. In this Complaint, all references to "L18" include
6  "L18 Holdings, Inc."

7       14.    Does 1 through 10, inclusive, are sued under such fictitious names
8  because Turn Key is unaware at this time of the true names and capacities of such
9  defendants, and when the true names and capacities are ascertained, Turn Key will
10 seek leave of Court to further amend this Complaint accordingly. Turn Key
11 alleges that each of the fictitiously named defendants is liable to Turn Key as
12 alleged herein.

13      15.    Turn Key alleges, that at various times mentioned, the defendants,
14 and each of them, were the partners, agents, servants, licensors, licensees,
15 employers and/or employees of each of the other defendants, and that in doing the
16 things described herein, were acting in the scope of their authority as such. Turn
17 Key further alleges that to the extent that any defendant might have been acting
18 outside of such authority, that each defendant authorized and ratified such acts
19 upon learning of them, thereby making the acts of each defendant the acts of the
20 other defendant. The allegations in this paragraph will likely have evidentiary
21 support after a reasonable opportunity for further investigation or discovery.

22                                    **III.**

23                          **FACTUAL ALLEGATIONS**

24      16.    Plaintiff Turn Key is a winery with facilities in San Luis Obispo and
25 Santa Barbara Counties. Turn Key produces wines for itself, for its commonly-
26 owned and/or operated sister companies, and for third-party clients, all of whom
27 are "related companies" for trademark use-in-commerce purposes, as that term is
28 defined by 15 U.S.C. § 1127. Turn Key's principals, including Mr. Nicholas

Miller, are members of a family that has been in the agricultural industry on California's Central Coast for at least five generations.

17.    Defendant CustomVine is a wine broker and intermediary between wineries and volume purchasers, with a focus on selling wines to restaurant chains and other commercial organizations that sell wines, including private-label wines, on their premises and through wine clubs. CustomVine's founders are Mr. Kevin Boyer and Mr. Phillip James. Mr. Boyer is CustomVine's CEO. Turn Key is a minority shareholder in CustomVine and as such has received various communications from CustomVine's management to CustomVine's shareholders.

18.    Defendant Penrose Hill is a self-professed winery that focuses on producing wines for wine clubs that sell wines to their members. Mr. Boyer is a member of Penrose Hill's Advisory Board. Mr. James is Penrose Hill's CEO.

19.    Defendant Rack & Riddle is a winery that that produces private-label-branded wines for third-party clients that are "related companies" for trademark use-in-commerce purposes, as that term is defined by 15 U.S.C. § 1127.

20.    Defendant Greg & Greg is a winery that produces private-label-branded wines for third-party clients that are "related companies" for trademark use-in-commerce purposes, as that term is defined by 15 U.S.C. § 1127.

21.    Defendant Plata Wine Partners is a winery that produces private-label-branded wines for third-party clients that are "related companies" for trademark use-in-commerce purposes, as that term is defined by 15 U.S.C. § 1127.

22.    Defendant L18 operates an internet retail wine-sales operation through which wines are sold to consumer end-users.

23.    Defendant A W Direct operates various wine clubs through which wines are sold to consumer end-users.

/ / /

/ / /

/ / /

**COMPLAINT RE BREACH OF CONTRACT, TRADEMARK INFRINGEMENT AND COUNTERFEITING, FALSE ADVERTISING, VICARIOUS INFRINGEMENT AND LIABILITY**

### A.     The Commission Agreement between Turn Key and CustomVine

24.     In 2014, Turn Key and CustomVine entered into an oral agreement (the "Commission Agreement") pursuant to which CustomVine would act as an intermediary between Turn Key and commercial purchasers of specially-produced and bottled private-label wines. Under the Commission Agreement, in return for introducing Turn Key to a purchaser, CustomVine would receive a commission based upon the gross sales prices of the wines that Turn Key custom-produced and custom-bottled for that purchaser to resell to its consumer customers.

25.     Also under the Commission Agreement, Turn Key agreed to refrain from offering the wines it produced and bottled for a CustomVine-procured customer to any other prospective purchasers. To induce Turn Key to agree to this restriction, CustomVine promised that if a CustomVine client-purchaser did not timely pay for and take possession of all of the wine that Turn Key custom-produced and custom-bottled for it, CustomVine would sell or otherwise pay for any wine that the CustomVine client-purchaser did not timely purchase (the "Guarantee-of-Payment Provision").

26.     Turn Key and CustomVine disagree as to when CustomVine's obligation under the Guarantee-of-Payment Provision of the Commission Agreement accrued. CustomVine contends that its obligation did not accrue until 15 months after the wine first was made ready for delivery to the private label customer at Turn Key's loading dock in Santa Barbara County, within the Central District of California. Turn Key contends that the obligation accrued 12 months after the wine first was made ready for delivery. For purposes of this action, however, that disagreement is immaterial because the breaches that are the subject of Turn Key's breach-of-contract cause of action involve wines that remained unsold more than 15 months after first becoming ready for delivery. Thus, even under CustomVine's own interpretation of the Commission Agreement, it has breached its obligations under the Guarantee-of-Payment Provision.

27.   The Commission Agreement was not reduced to writing. However, the Guarantee-of-Payment Provision was memorialized in emails between Turn Key and CustomVine. For example:

a.   In an email from Turn Key's Mr. Miller to CustomVine's Mr. Boyer dated June 20, 2014, Mr. Miller asked about the "teeth" in CustomVine's agreements with purchasers that CustomVine would introduce to Turn Key – i.e., Mr. Miller asked about the practical assurances that the parties would receive that the intended purchaser actually would take possession of and pay for the full amount of wine that Turn Key specially-produced and bottled for it (and that Turn Key did not offer for sale to or through any other purchasers). Mr. Boyer responded that same day, stating, in part: "The fail-safe is that if they breach their contract, their exclusivity with the brand terminates so we can sell it elsewhere to another client. CustomVine will take on the onus of finding that other channel." True and correct copies of these emails are Exhibit 1 to this Complaint.

b.   In an email from Mr. Boyer to Mr. Miller dated December 10, 2014, Mr. Boyer attached a hyperlink to a proposed written Commission Agreement between CustomVine and Turn Key. The proposed written Commission Agreement included a provision whereby CustomVine agreed to pay the difference between the "price agreed to by parties prior to … production … and a subsequently reduce[d] or clearance price and all additional marketing and administrative costs incurred by [Turn Key] to induce and consummate said sale". The proposed Commission Agreement that CustomVine prepared expressly identified Turn Key by its legal name, i.e., the Turn Key Trade Name (see paragraph 37, below). The parties did not execute the proposed agreement. Nevertheless, they continued to operate under the oral Commission Agreement as before. A true and correct copy of Mr. Boyer's December 10, 2014 email is Exhibit 2. However, the link to the proposed Commission Agreement appears to have expired, and Plaintiff Turn Key is unable to locate a copy of that document.

c.     In an email from Mr. Miller to Mr. Boyer dated August 24, 2015, Mr. Miller said, among other things: "Not only do we have an enormous investment into these 1,000s of cases that are on run rates of well over 12 months [i.e., wine that had not been paid for and picked up for more than 12 months after the date that such wines first became ready for delivery], but because we are storing other cased goods offsite, there are additional hard dollar costs that escalate for every additional month the cases sit in our warehouse." Mr. Boyer responded by email dated September 2, 2015, stating, in part: "Our agreement remains in place, if [the purchasers] don't go through the product in the time we agreed, I will liquidate it to one of our many wine club partners." True and correct copies of these emails are Exhibit 3.

d.     In an email from Mr. Jeff Chaney, of Turn Key, to Mr. Boyer, dated August 28, 2015, Mr. Chaney expressed concern about "non-performing programs" – i.e., CustomVine client-purchasers for whom Turn Key had custom-produced and custom-bottled wine but who had failed to take possession of and pay for the subject wines – and told Mr. Boyer that going forward Turn Key would deduct from CustomVine's commission the warehouse storage fees incurred for delinquent customers. Mr. Boyer responded that same day, stating, in part: "Our agreement ... states that after 15 months from the first pick up ... if inventory still remains we will liquidate appropriately to another client." True and correct copies of these emails are Exhibit 4.

e.     In an email from Mr. Miller to Mr. Boyer dated September 4, 2015, Mr. Miller expressed frustration at the slow sales of wines that Turn Key had custom-produced and custom-bottled for CustomVine's customers &Pizza and Houlihan's. Mr. Boyer responded by email dated September 8, 2015, repeating the assurances stated in his September 2nd email. As to &Pizza, he said, "The owner of &Pizza ... has stated he expects it to pick up quickly, if it does not I can purchase 500 cases of each for wine club quickly by the end of the year." As

**COMPLAINT RE BREACH OF CONTRACT, TRADEMARK INFRINGEMENT AND COUNTERFEITING, FALSE ADVERTISING, VICARIOUS INFRINGEMENT AND LIABILITY**

to Houlihan's, Mr. Boyer said he expected "traction to pick up over the next 30 days as we get into busy season," and added, "Again, if it does not we can liquidate…If worst case, I can do a cross-marketing opportunity with them and Time Inc. to put 200 cases or more into that wine club." True and correct copies of these emails are Exhibit 5. Despite Mr. Boyer's assurances as described in this paragraph 27.e, these CustomVine client-purchasers did not timely or otherwise purchase or arrange for the purchase of all the subject wines and neither Mr. Boyer nor CustomVine thereafter purchased or arranged for the purchase of any significant portion the referenced wines.

28.    Pursuant to the Commission Agreement, including its Guarantee-of-Payment Provision, CustomVine introduced Turn Key to the restaurant chain "&Pizza." Turn Key agreed to and did custom-produce and custom-bottle two private-label wines to be purchased and then sold to consumers by &Pizza. Turn Key produced and bottled the wine described in this paragraph 28 at its facilities within San Luis Obispo and Santa Barbara Counties, within the Central District of California. &Pizza did not pay for and take possession of all of the wine it had agreed to buy from Turn Key.

29.    Pursuant to the Commission Agreement, including its Guarantee-of-Payment Provision, CustomVine introduced Turn Key to the Stonewood Grill and Tavern restaurant chain. Turn Key agreed to, and did, custom-produce and custom-bottle three private-label wines to be sold by Stonewood Grill and Tavern. Turn Key produced and bottled the wine described in this paragraph 29 at its facilities in San Luis Obispo and Santa Barbara Counties, and proffered such wine for delivery to Stonewood Grill and Tavern at Turn Key's loading dock within Santa Barbara County, all within the Central District of California. Stonewood Grill and Tavern did not pay for and take possession of all of the wine it had agreed to buy from Turn Key.

COMPLAINT RE BREACH OF CONTRACT, TRADEMARK INFRINGEMENT AND COUNTERFEITING, FALSE ADVERTISING, VICARIOUS INFRINGEMENT AND LIABILITY

30.     Pursuant to the Commission Agreement, including its Guarantee-of-Payment Provision, CustomVine introduced Turn Key to the Houlihan's restaurant chain. Turn Key agreed to and did custom-produce and custom-bottle six private-label wines to be sold by Houlihan's. Turn Key produced and bottled the wine described in this paragraph 30 at its facilities within San Luis Obispo and Santa Barbara Counties, and proffered such wine for delivery to Houlihan's at Turn Key's loading dock within Santa Barbara County, all within the Central District of California. Houlihan's did not pay for and take possession of all of the wine it had agreed to buy from Turn Key.

31.     Pursuant to the Commission Agreement, CustomVine introduced Turn Key to Hoosier Hospitality Group, which owns the restaurant chain Ruth's Chris Steak House. Turn Key agreed to and did custom-produce and custom-bottle two private-label wines to be sold by Ruth's Chris. Turn Key produced and bottled the wine described in this paragraph 31 at its facilities within San Luis Obispo and Santa Barbara Counties, and proffered such wine for delivery to Hoosier Hospitality Group at Turn Key's loading dock within Santa Barbara County, all within the Central District of California. Hoosier Hospitality Group did not pay for and take possession of all of the Front Runner wine it had agreed to buy from Turn Key.

32.     Pursuant to the terms of the Commission Agreement, all of the wines that Turn Key custom-produced and custom-bottled for CustomVine's clients were to be sold and, to the extent that they were purchased by CustomVine's clients, in fact were sold, free on board Turn Key's shipping dock within Santa Barbara County. Accordingly, Turn Key and CustomVine agreed that CustomVine's performance of the Guaranty-of-Payment Provision was to take place at Turn Key's facilities within the Central District of California and it was there, at Turn Key's facilities within the Central District, where CustomVine breached its contractual obligations to Turn Key.

33.     More than 15 months after each of the custom-produced and custom-bottled wines described in paragraphs 28 through 32 were first made ready for delivery to their respective CustomVine client-purchasers within the Central District of California, Turn Key demanded that CustomVine honor its obligations under the Guarantee-of-Payment Provision of the Commission Agreement, but CustomVine refused, thus breaching the Commission Agreement and relieving Turn Key of its contractual obligation to refrain from offering the subject wines to third parties.

34.     After CustomVine refused to honor its contractual obligations under the Guarantee-of-Payment Provision of the Commission Agreement, Turn Key used reasonable efforts to mitigate the damages caused by CustomVine's breach of its contractual obligations to Turn Key. Accordingly, Turn Key arranged to sell to third parties the wines that Turn Key had custom-produced and custom-bottled for CustomVine's customers and that neither such CustomVine customers nor CustomVine had purchased or arranged to be purchased, respectively. Turn Key sold such wines at prices substantially lower than the prices at which CustomVine had contracted to purchase them pursuant to the Guarantee-of-Payment Provision of the Commission Agreement.

**B.     Turn Key's Protectable Interest and Rights in and to the TURN KEY Trademark and the Turn Key Trade Name**

35.     Turn Key filed articles of organization with the California Secretary of State on December 13, 2010.

36.     On March 15, 2011, Turn Key filed a fictitious business name statement in the County of Santa Barbara for the "Turn Key Wine Brands" and "Turn Key" fictitious business names. The Clerk for the County of Santa Barbara recorded the statement and assigned Fictitious Business Name No. 2011-0000834 to it.

37. On May 27, 2011, Turn Key filed a fictitious business name statement in the County of Santa Barbara for the "Turn Key Wine" and "Turn Key Wine Company" fictitious business names. The Clerk for the County of Santa Barbara recorded the statement and assigned Fictitious Business Name No. 2011-0001657 to it. The term "Turn Key Trade Name" as used in this Complaint refers collectively to the following trade names: "Turn Key Wine Brands LLC", "Turn Key Wine Brands", "Turn Key", "Turn Key Wine" and "Turn Key Wine Company".

38. Turn Key continuously has used the Turn Key Trade Name as its trade name continuously since its organization as a California limited liability company, producing approximately 7,170,000 bottles of wine for itself and its clients from 2011 until the present day. Accordingly, Turn Key has created tremendous goodwill in the Turn Key Trade Name.

39. Turn Key first began to use the TURN KEY trademark in commerce to identify and distinguish wines at least as early as March 20, 2012. Since then, Turn Key has used the TURN KEY trademark to identify Turn Key as the source of such wines and to distinguish wines produced by Turn Key.

40. The United States Patent and Trademark Office ("PTO") issued to Turn Key a federal trademark registration (U.S. Reg. No. 4,165,358) for the TURN KEY trademark on June 26, 2012. The TURN KEY trademark registration has remained current from the time it first was registered until the present day.

41. Since its first use of the TURN KEY trademark in-commerce, Turn Key has produced and sold approximately 98,000 bottles of wine under and distinguished by the TURN KEY trademark.

C.     The Deterioration of the Business Relationship between Turn Key and CustomVine; CustomVine's Retaliation

42. The business relationship between Turn Key and CustomVine began to deteriorate in late July 2015 after CustomVine began to refuse to perform its

obligations pursuant to the Guarantee-of-Payment Provision of the Commission Agreement.

43.    On July 28, 2015, Mr. Boyer emailed Mr. Miller, stating, in part, "I'd like to catch up regarding the timing of invoices and payments between our companies. There have been some discrepancies as you know and I'd like us both to be able to get things cleared up so we can start fresh and both with the same expectations. [¶] We should also have a conversation about future business opportunities." On July 30, 2015, Mr. Miller responded to Mr. Boyer's July 28 email, stating, in part: "There is no discussion needed. ... I have approved all commissions that are ready to pay. As soon as [CustomVine] pays their outstanding in full [*sic*], those commissions will be released. ... Before we talk future projects, [CustomVine] needs to perform on the current ones."

44.    By September and October 2015, Turn Key had made several increasingly insistent demands that CustomVine sell or otherwise pay for the unsold wines described herein. In some instances, Turn Key offered to attempt to mitigate the damages caused by CustomVine's failures to purchase or otherwise sell the subject wines by selling such wines to or through a third-party (other than CustomVine's client). In response to these offers to attempt to mitigate Turn Key's damages, Mr. Boyer and CustomVine made specific representations about alternate sales channels and purchasers of the subject wines in order to dissuade Turn Key from selling the subject wines to unrelated parties. In reasonable reliance upon these defendants' representations, Turn Key refrained from so selling the subject wines to third parties until, at least, February 3, 2016.

45.    CustomVine failed to follow through on the representations of Mr. Boyer referenced in the preceding paragraph. Ultimately, Turn Key made it clear that it would not agree to produce any additional wines for any CustomVine client until CustomVine made good on its contractual obligations pursuant to the Guarantee-of-Payment Provision of the Commission Agreement. This apparently

**COMPLAINT RE BREACH OF CONTRACT, TRADEMARK INFRINGEMENT AND COUNTERFEITING, FALSE ADVERTISING, VICARIOUS INFRINGEMENT AND LIABILITY**

upset Mr. Boyer and CustomVine and contributed to CustomVine's apparent decision to encourage Penrose Hill to adopt and use the "Turnkey" fictitious business name and the TURNKEY trademark in plain and hostile violation of Turn Key's rights to the Turn Key Trade Name and the TURN KEY trademark.

46.     Earlier in 2015, on May 18, Mr. Boyer had informed CustomVine investors, including Turn Key, that he and Mr. James were launching Penrose Hill, which Mr. Boyer described as a "consumer facing wine club provider". As indicated above, Mr. Boyer is (or, at all times relevant to this action, was) a Penrose Hill Advisory Board Member.

47.     By virtue of the relations and relationship between Turn Key and CustomVine, evidenced by the Commission Agreement, the written agreement proposed by Mr. Boyer as described in paragraph 27.b, Turn Key's status as a minority shareholder of CustomVine and other facts and circumstances actually known to CustomVine, CustomVine was actually aware of Turn Key's protectable proprietary interests in the TURN KEY trademark, the Turn Key brand name and the Turn Key Trade Name.

48.     By virtue of Mr. Boyer's position as founder and CEO of CustomVine, as well as by virtue his personal involvement with the Commission Agreement and other facts and circumstances actually known to Mr. Boyer, Mr. Boyer was aware of Turn Key's protectable proprietary interests in the TURN KEY trademark, the Turn Key brand name and the Turn Key Trade Name.

49.     By virtue of Mr. James' position as a founder and shareholder of CustomVine, Mr. James' position as the CEO of Penrose Hill, Mr. Boyer's position as a member of Penrose Hill's Advisory Board and other facts and circumstances actually known to Penrose Hill, defendant Penrose Hill was or should have been aware of Turn Key's protectable proprietary interests in the TURN KEY trademark, the Turn Key brand name and the Turn Key Trade Name.

**D.    CustomVine and Penrose Hill Adopt Misleading and Deceptive Turnkey Trade Name and Infringe on the TURN KEY Trademark**

50.    On September 30, 2015, after CustomVine's breach and Turn Key's consequent representation of its unwillingness to produce additional wines for CustomVine's clients, as described in paragraph 43, Penrose Hill submitted a fictitious business name statement to the County of Sonoma, California for the "Turnkey" fictitious business name. The Clerk of the County of Sonoma registered the fictitious business name statement and assigned Clerk FBN Statement No. 201503856 to it.

51.    On November 18, 2015, Mr. James and Penrose Hill applied to the Alcohol and Tobacco Tax Trade Bureau ("TTB") for a Certificate of Label/Bottle Approval ("COLA") for a label for a 2014 Napa Valley red wine to be sold under and distinguished by the TURNKEY trademark, using the "Turnkey" fictitious business name to identify Penrose Hill as the producer and source of the wine. The TTB issued the COLA on December 9, 2015. Thereafter, defendant Rack & Riddle and defendant Penrose Hill bottled wine under the TURNKEY trademark, using the "Turnkey" fictitious business name to identify Penrose Hill as the producer and source of the wine, and these defendants have so marketed and sold said wine from the time of bottling until the present day.

52.    On or shortly before August 12, 2016, Turn Key first learned about the COLA referenced in the preceding paragraph, and on August 12, 2016, Turn Key sent defendants CustomVine, Penrose Hill, Mr. Boyer, and Rack & Riddle a letter expressly informing each such defendant of Turn Key's ownership of U.S. Reg. No. 4,165,358 for TURN KEY for "wines".

53.    On or shortly before August 23, 2016, Turn Key first learned (a) that defendants CustomVine, Penrose Hill and Rack & Riddle had actually bottled wine under the TURNKEY trademark, and (b) that defendant Time was selling wines bottled under the TURNKEY trademark through its Firstleaf wine club. On

August 23, 2016, Turn Key sent defendants CustomVine, Penrose Hill, Mr. Boyer, Rack & Riddle and Time a "cease-and-desist" letter, demanding that such defendants stop using the deceptive and confusing TURNKEY trademark, and provide certain specified data about their infringing uses of the TURNKEY trademark. As of the date this action is filed, these defendants have refused to stop using the TURNKEY trademark and, in fact, continue to use it. In addition, these defendants have refused to provide any information about their infringing uses of the TURNKEY trademark.

54.     Turn Key believes, based on the relationships of the parties and the timing of the events described above, and on the defendants' collective refusal to answer questions about their selection and infringing uses of the subject trademark and other factors, that Mr. Boyer and CustomVine encouraged Penrose Hill to use the TURNKEY trademark to distinguish wines not produced by Turn Key in retaliation for Turn Key's refusal to agree to produce additional/future wines for CustomVine's clients and otherwise to harm Turn Key. Although these facts are solely within the possession of the defendants, but Turn Key expects them facts to be borne out by evidence obtained through reasonable discovery in this action.

**E.     Turn Key's Protectable Interest and Rights in and to the WAYSIDE Trademark; Illicit use of the WAYSIDE Trademark by Defendants CustomVine, L18, A W Direct, Spelletich and Plata Wine Partners**

55.     On August 1, 2014, Turn Key, through its related companies, Central Coast Wine Services, Central Coast Wine Warehouse, L.P., and Stowell Road Wine Warehouse, Inc., first applied for a COLA for a white wine with a Central Coast of California appellation to be sold under and distinguished by the WAYSIDE trademark. The TTB issued the COLA on August 23, 2104.

56.     Turn Key has used the WAYSIDE trademark in commerce to identify and distinguish wines produced by it since at least as early as October 27, 2014.

On that date, Turn Key first shipped wines distinguished by the WAYSIDE trademark to defendant L18. From then until the present day, Turn Key has used the WAYSIDE trademark to identify and distinguish wines created by Turn Key.

57.    On May 3, 2016, the PTO granted Turn Key a federal trademark registration (U.S. Reg. No. 4,949,056) for the WAYSIDE trademark for "wines". The WAYSIDE trademark registration has remained current from the time it first was registered until the present day.

58.    On or about April 22, 2016, well after the deterioration of the relationship between Turn Key and CustomVine, defendants Plata Wine Partners and A W Direct applied for a COLA for a red wine with a California appellation using the WAYSIDE trademark to identify and distinguish the subject wine that these defendants intended to bottle. The TTB issued the COLA on May 19, 2016.

59.    On or about April 28, 2016, defendants L18 and A W Direct applied for a COLA for a white wine with a California appellation using the WAYSIDE trademark to identify and distinguish the subject wine that these defendants intended to bottle. The TTB issued the COLA on May 23, 2016.

60.    On or about April 28, 2016, defendants L18 and A W Direct applied for a COLA for another red wine with a California appellation using the WAYSIDE trademark to identify and distinguish the subject wine that these defendants intended to bottle. The TTB issued the COLA on May 31, 2016.

61.    Turn Key first learned about the COLAs referenced in paragraphs 58 through 60 shortly before August 9, 2016. On August 9, 2016, Turn Key sent defendants CustomVine, Mr. Boyer, L18 and Plata Wine Partners a letter expressly informing Mr. Boyer and each such defendant of Turn Key's ownership of U.S. Reg. No. 4,949,056 for WAYSIDE for "wines".

62.    On or about August 3, 2016, defendants L18, A W Direct and Spelletich applied for a COLA for another white wine with a California appellation using the WAYSIDE trademark to identify and distinguish the subject

wine that these defendants intended to bottle. The TTB issued the COLA on August 25, 2016.

63.    On or shortly before September 15, 2016, Turn Key first learned that defendants CustomVine, L18, Plata Wine Partners and A W Direct actually had bottled wine under the WAYSIDE trademark. Accordingly, on September 15, 2016, Turn Key sent defendants CustomVine, Mr. Boyer, L18, Plata Wine Partners and A W Direct a "cease-and-desist" letter, demanding that they stop using the WAYSIDE trademark and provide certain specified data about their infringing uses of the WAYSIDE trademark. As of the date this action is filed, these defendants have refused to provide any substantive information about their uses of the WAYSIDE trademark, including but not limited to information relating to the amounts of wines produced and illicitly-labeled with the WAYSIDE trademark and/or their sales and/or the present disposition of such illicitly-labeled wines.

64.    Turn Key believes, based on the relationships of the parties and the timing of the events described above, and on the defendants' collective refusal to answer questions about their selection and infringing uses of the subject trademark and other factors, that Mr. Boyer and CustomVine encouraged defendants L18, A W Direct and Plata Wine Partners to use the WAYSIDE trademark to distinguish wines not produced by Turn Key in retaliation for Turn Key's refusal to agree to produce wines for CustomVine's clients and otherwise to harm Turn Key. These facts are solely within the possession of the defendants, but Turn Key expects them to be borne out by evidence obtained through reasonable discovery in this action.

**F.    Turn Key's Protectable Interest and Rights in and to the COMPASS POINT Trademark; Illicit use of the COMPASS POINT Trademark by Defendants CustomVine, L18, A W Direct and Spelletich**

65.     On August 1, 2014, Turn Key, through its related companies, Central Coast Wine Services, Central Coast Wine Warehouse, L.P. and Stowell Road Wine Warehouse, Inc., first applied for a COLA for a white wine with a Central Coast appellation to be distinguished and sold under the COMPASS POINT trademark. The TTB issued the COLA on August 23, 2104.

66.     Turn Key first began to use the COMPASS POINT trademark in commerce to identify and distinguish wines produced by it at least as early as August 1, 2014, when it first shipped wines produced by Turn Key and distinguished by the COMPASS POINT trademark to defendant L18. From then until the present day, Turn Key has used the COMPASS POINT trademark to identify and distinguish wines created by Turn Key.

67.     The PTO granted Turn Key a federal trademark registration (U.S. Reg. No. 4,870,710) for the COMPASS POINT trademark for "wines" on December 15, 2015. The COMPASS POINT trademark registration has remained current from the time it first was registered until the present day.

68.     On or about May 9, 2016, well after the deterioration of Turn Key's relationship with CustomVine, defendants L18 and A W Direct applied for a COLA for a merlot with a Paso Robles appellation using the COMPASS POINT trademark to identify and distinguish the subject wine that these defendants intended to bottle. The TTB issued the COLA on June 3, 2016.

69.     Turn Key first learned about the COLA referenced in the preceding paragraph shortly before August 9, 2016. On August 9, 2016, Turn Key sent defendants CustomVine, Mr. Boyer, and L18 a letter expressly informing Mr. Boyer and each such defendant of Turn Key's ownership of U.S. Reg. No. 4,870,710 for COMPASS POINT for "wines".

70.     On or shortly before September 15, 2016, Turn Key first learned that defendants CustomVine, L18 and A W Direct actually had bottled wine under the COMPASS POINT trademark. Accordingly, on September 15, 2016, Turn Key

sent defendants CustomVine, Mr. Boyer, L18 and A W Direct a "cease-and-desist" letter, demanding that they stop using the COMPASS POINT trademark and provide certain specified data about their infringing uses of the COMPASS POINT trademark. As of the date this action is filed, these defendants have refused to provide any substantive information about their uses of the COMPASS POINT trademark, including but not limited to information relating to the amounts of wines produced and illicitly-labeled with the COMPASS POINT trademark, their sales and/or the present disposition of such illicitly-labeled wines.

71.     Turn Key believes, based on the relationships of the parties and the timing of the events described above, and on the defendants' collective refusal to answer questions about their selection and infringing uses of the subject trademark and other factors, that Mr. Boyer and CustomVine encouraged defendants L18, A W Direct and Spelletich to use the COMPASS POINT trademark to distinguish wines not produced by Turn Key in retaliation for Turn Key's refusal to agree to produce wines for CustomVine's clients and otherwise to harm Turn Key. These facts are solely within the possession of the defendants, but Turn Key expects these facts to be borne out by evidence obtained through reasonable discovery in this action.

**G.     Turn Key's Protectable Interest and Rights in and to the ELEANORA MARIE Trademark; Illicit use of the ELEANORA MARIE Trademark by Defendants CustomVine, L18, A W Direct, Spelletich and Gregg & Gregg**

72.     On June 27, 2014, Turn Key, through its related companies, Central Coast Wine Services, Central Coast Wine Warehouse, L.P. and Stowell Road Wine Warehouse, Inc., first applied for a COLA for a wine to be distinguished and sold under the ELEANORA MARIE trademark. The TTB issued the COLA for a Chardonnay with a Santa Barbara appellation on July 29, 2014.

**COMPLAINT RE BREACH OF CONTRACT, TRADEMARK INFRINGEMENT AND COUNTERFEITING, FALSE ADVERTISING, VICARIOUS INFRINGEMENT AND LIABILITY**

73.     Turn Key first began to use the ELEANORA MARIE trademark in commerce to identify and distinguish wines produced by it at least as early as June 27, 2014, when it first shipped wines produced by Turn Key and distinguished by the ELEANORA MARIE trademark to defendant L18. From then until the present day, Turn Key has used the ELEANORA MARIE trademark to identify and distinguish wines created by Turn Key.

74.     The PTO granted Turn Key a federal trademark registration (U.S. Reg. No. 4,888,582) for the ELEANORA MARIE trademark for "wines" on January 19, 2016. The ELEANORA MARIE trademark registration has remained current from the time it first registered until the present day.

75.     On or about May 9, 2016, defendants L18 and A W Direct applied for a COLA for a Chardonnay with a Napa, California appellation using the ELEANORA MARIE trademark to identify and distinguish the subject wine that these defendants intended to bottle. The TTB issued the COLA on June 4, 2016.

76.     On or about May 23, 2016, defendants L18 and Greg & Greg applied for a COLA for a Chardonnay with a California appellation using the ELEANORA MARIE trademark to identify and distinguish the subject wine that these defendants intended to bottle. The TTB issued the COLA on June 18, 2016.

77.     Turn Key first learned about the COLAs referenced in the preceding two paragraphs shortly before August 9, 2016. On August 9, 2016, Turn Key sent defendants CustomVine, Mr. Boyer, L18 and Greg & Greg a letter expressly informing Mr. Boyer and each such defendant of Turn Key's ownership of U.S. Reg. No. 4,888,582 for ELEANORA MARIE for "wines."

78.     On or shortly before September 15, 2016, Turn Key first learned that defendants CustomVine, L18, A W Direct and Greg & Greg actually had bottled wines under the COMPASS POINT trademark. Accordingly, on September 15, 2016, Turn Key sent defendants CustomVine, Mr. Boyer, L18, A W Direct and Greg & Greg a "cease-and-desist" letter, demanding that they stop using the

**COMPLAINT RE BREACH OF CONTRACT, TRADEMARK INFRINGEMENT AND COUNTERFEITING, FALSE ADVERTISING, VICARIOUS INFRINGEMENT AND LIABILITY**

ELEANORA MARIE trademark and provide certain specified data about their infringing uses of the ELEANORA MARIE trademark. As of the date this action is filed, these defendants have refused to provide any substantive information about their uses of the ELEANORA MARIE trademark, including but not limited to information relating to the amounts of wines produced and illicitly-labeled with the ELEANORA MARIE trademark, their sales and/or the present disposition of such illicitly-labeled wines.

79.   Turn Key believes, based on the relationships of the parties and the timing of the events described above, and on the defendants' collective refusal to answer questions about their selection and infringing uses of the subject trademark and other factors, that Mr. Boyer and CustomVine encouraged defendants L18, A W Direct, Spelletich and Greg & Greg to use the ELEANORA MARIE trademark to distinguish wines not produced by Turn Key in retaliation for Turn Key's refusal to agree to produce wines for CustomVine's clients and otherwise to harm Turn Key. These facts are solely within the possession of the defendants, but Turn Key expects them to be borne out by evidence obtained through reasonable discovery in this action.

# IV.

## CLAIMS FOR RELIEF

### First Claim for Relief

**For Breach of Contract**

**Against Defendant CustomVine**

80.   Turn Key realleges and incorporates by reference the allegations of paragraphs 1 through 79 of this Complaint.

81.   Turn Key and defendant CustomVine entered into a contract, specifically, the Commission Agreement.

82.   Turn Key performed its obligations under the Commission Agreement or was excused from performing them.

83.     CustomVine breached the Commission Agreement in the manner described in the Factual Allegations.

84.     As a result of CustomVine's breach of the Commission Agreement, Turn Key was damaged in an amount to be proven at trial, but in excess of $75,000.

## CLAIMS FOR RELIEF AS TO THE TURN KEY TRADEMARK
## AND TURNKEY TRADE NAME
### (Second through Seventh Claims for Relief)

### Second Claim for Relief
### For Trademark Infringement (15 U.S.C. § 1114(1)(a)) (TURN KEY)
### Against Defendants CustomVine, Penrose Hill,
### Rack & Riddle, Time and Does 1-5

85.     Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 79.

86.     Plaintiff's TURN KEY trademark is a "registered mark" for purposes of 15 U.S.C. § 1114(1)(a) and as defined in 15 U.S.C. § 1127.

87.     The TURNKEY trademark used by defendants CustomVine, Penrose Hill, Rack & Riddle, Time and Does 1 through 5 is a "reproduction, counterfeit, copy, or colorable imitation of plaintiff's TURN KEY trademark for purposes of 15 U.S.C. § 1114(1)(a) and as defined in 15 U.S.C. § 1127.

88.     Both plaintiff's TURN KEY trademark and the TURNKEY trademark used by defendants CustomVine, Penrose Hill, Rack & Riddle, Time and Does 1 through 5 are used as names for wine.

89.     Without plaintiff's consent, defendants CustomVine, Penrose Hill, Rack & Riddle, Time and Does 1 through 5 used the TURNKEY trademark "in commerce" for purposes of 15 U.S.C. § 1114(1)(a) and as defined in 15 U.S.C. § 1127.

90.     Without plaintiff's consent, defendants CustomVine, Penrose Hill, Rack & Riddle, Time and Does 1 through 5 used the TURNKEY trademark in connection with the sale, offering for sale, distribution, or advertising of goods or services for purposes of 15 U.S.C. § 1114(1)(a).

91.     The use of the TURNKEY trademark by defendants CustomVine, Penrose Hill, Rack & Riddle, Time and Does 1 through 5 is likely to cause confusion or mistake, or to deceive, because of the TURNKEY trademark's confusing similarity to the TURN KEY trademark, for purposes of 15 U.S.C. § 1114(1)(a).

92.     As a result of the use of the TURNKEY trademark by defendants CustomVine, Penrose Hill, Rack & Riddle, Time and Does 1 through 5, plaintiff has been damaged and is entitled to recover money damages under 15 U.S.C. § 1117(a).

93.     This is an "exceptional case", entitling plaintiff to an award of attorney fees under the last sentence of 15 U.S.C. § 1117(a).

94.     As a result of the use of the TURNKEY trademark by defendants CustomVine, Penrose Hill, Rack & Riddle, Time and Does 1 through 5, plaintiff is entitled to injunctive relief under 15 U.S.C. § 1116.

## Third Claim for Relief

**For Trademark Counterfeiting (15 U.S.C. § 1114(1)(b) (TURN KEY)**

**Against Defendants CustomVine, Penrose Hill,**

**Rack & Riddle, Time and Does 1-5**

95.     Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 79.

96.     Plaintiff's TURN KEY trademark is a "registered mark" for purposes of 15 U.S.C. § 1114(1)(b) and as defined in 15 U.S.C. § 1127.

97.     The TURNKEY trademark used by defendants CustomVine, Penrose Hill, Rack & Riddle, Time and Does 1 through 5 "reproduce[s], counterfeit[s],

**COMPLAINT RE BREACH OF CONTRACT, TRADEMARK INFRINGEMENT AND
COUNTERFEITING, FALSE ADVERTISING, VICARIOUS INFRINGEMENT AND LIABILITY**

cop[ies], or colorably imitate[s]" plaintiff's TURN KEY trademark for purposes of 15 U.S.C. § 1114(1)(b) and as defined in 15 U.S.C. § 1127.

98.   The TURNKEY trademark used by defendants CustomVine, Penrose Hill, Rack & Riddle, Time and Does 1 through 5 is a counterfeit mark as defined in 15 U.S.C. § 1116(d)(1)(B).

99.   Both plaintiff's TURN KEY trademark and the TURNKEY trademark used by defendants CustomVine, Penrose Hill, Rack & Riddle, Time and Does 1 through 5 are used as names for wine.

100.   Without plaintiff's consent, defendants CustomVine, Penrose Hill, Rack & Riddle, Time and Does 1 through 5 applied the TURNKEY trademark to labels, signs, prints, packages, wrappers, receptacles, and/or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods, for purposes of 15 U.S.C. § 1114(1)(b).

101.   The use of the TURNKEY trademark by defendants CustomVine, Penrose Hill, Rack & Riddle, Time and Does 1 through 5 is likely to cause confusion or mistake, or to deceive, because of its confusing similarity to plaintiff's TURN KEY trademark, for purposes of 15 U.S.C. § 1114(1)(b).

102.   When defendants CustomVine, Penrose Hill, Rack & Riddle, Time and Does 1 through 5 applied the TURNKEY trademark to labels, signs, prints, packages, wrappers, receptacles and/or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution or advertising of goods, those defendants intended or knew that the TURNKEY trademark would cause confusion or mistake, or to deceive.

103.   As a result of the use of the TURNKEY trademark by defendants CustomVine, Penrose Hill, Rack & Riddle, Time and Does 1 through 5, plaintiff has been damaged and is entitled to recover money damages under 15 U.S.C. § 1117(a).

**COMPLAINT RE BREACH OF CONTRACT, TRADEMARK INFRINGEMENT AND COUNTERFEITING, FALSE ADVERTISING, VICARIOUS INFRINGEMENT AND LIABILITY**

104.   In the alternative to the relief sought in the preceding paragraph, plaintiff may seek statutory damages under 15 U.S.C. § 1117(c).

105.   This is an "exceptional case", entitling plaintiff to an award of attorney fees under the last sentence of 15 U.S.C. § 1117(a).

106.   As a result of the use of the TURNKEY trademark by defendants CustomVine, Penrose Hill, Rack & Riddle, Time and Does 1 through 5, plaintiff is entitled to injunctive relief under 15 U.S.C. § 1116.

107.   Defendants CustomVine, Penrose Hill, Rack & Riddle, Time and Does 1 through 5 intentionally used the TURNKEY trademark, knowing that it was a counterfeit mark as defined in 15 U.S.C. § 1116(d), in connection with the sale, offering for sale, or distribution of goods. As a result, plaintiff is entitled to treble damages and prejudgment interest under 15 U.S.C. § 1117(b).

### Fourth Claim for Relief

**For Unfair Competition (15 U.S.C. § 1125(a)(1)(A))**

**Against Defendants CustomVine, Penrose Hill,**

**Rack & Riddle, Time and Does 1-5**

108.   Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 79.

109.   At all times relevant to this lawsuit, plaintiff has had a protectable interest in the TURN KEY trademark.

110.   At all times relevant to this lawsuit, plaintiff has had a protectable interest in the Trade Name.

111.   The TURNKEY trademark used by defendants CustomVine, Penrose Hill, Rack & Riddle, Time and Does 1 through 5 is confusingly similar to plaintiff's TURN KEY trademark.

112.   The TURNKEY trademark used by defendants CustomVine, Penrose Hill, Rack & Riddle, Time, and Does 1 through 5 is confusingly similar to the Trade Name.

113. Both plaintiff's TURN KEY trademark and the TURNKEY trademark used by defendants CustomVine, Penrose Hill, Rack & Riddle, Time and Does 1 through 5 are used as names for wine.

114. Both the Trade Name and the TURNKEY trademark used by defendants CustomVine, Penrose Hill, Rack & Riddle, Time and Does 1 through 5 are used in connection with wines.

115. Without plaintiff's consent, defendants CustomVine, Penrose Hill, Rack & Riddle, Time and Does 1 through 5 used the TURNKEY trademark in commerce in connection with goods or services. These defendants' use of the TURNKEY trademark was and is likely to cause confusion or mistake, or to deceive as to: (a) the affiliation, connection, or association of defendants CustomVine, Penrose Hill, Rack & Riddle, Time and Does 1 through 5 with plaintiff; or (b) the origin, sponsorship, or approval of these defendants' goods, services or commercial activities by plaintiff.

116. Without plaintiff's consent, defendants CustomVine, Penrose Hill, Rack & Riddle, Time and Does 1 through 5 used the TURNKEY trademark in commerce in connection with commercial advertising or promotion. The use of the TURNKEY trademark by these defendants misrepresented the nature, characteristics, qualities, and/or geographic origin of their goods.

117. As a result of the use of the TURNKEY trademark as described in this claim for relief by defendants CustomVine, Penrose Hill, Rack & Riddle, Time and Does 1 through 5, plaintiff has been damaged and is entitled to recover money damages under 15 U.S.C. § 1117(a).

118. As a result of the use of the TURNKEY trademark by defendants CustomVine, Penrose Hill, Rack & Riddle, Time and Does 1 through 5 as described in this claim for relief, plaintiff also is entitled to injunctive relief under 15 U.S.C. § 1116.

**COMPLAINT RE BREACH OF CONTRACT, TRADEMARK INFRINGEMENT AND COUNTERFEITING, FALSE ADVERTISING, VICARIOUS INFRINGEMENT AND LIABILITY**

## **Fifth Claim for Relief**

### **For False Advertising (Cal. Bus. & Prof. Code § 17500) (TURN KEY)**

### **Against Defendants CustomVine, Penrose Hill,**

### **Rack & Riddle, Time and Does 1-5**

119.   Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 79.

120.   At all times relevant to this lawsuit, plaintiff has had a protectable interest in the TURN KEY trademark.

121.   The TURNKEY trademark used by defendants CustomVine, Penrose Hill, Rack & Riddle, Time and Does 1 through 5's is confusingly similar to plaintiff's TURN KEY trademark.

122.   The Turnkey fictitious business name used by defendants CustomVine, Penrose Hill, Rack & Riddle, Time and Does 1 through 5 to identify the source of wines not produced by plaintiff is likely to confuse and deceive consumers.

123.   Defendants CustomVine, Penrose Hill, Rack & Riddle, Time and Does 1 through 5 used the TURNKEY trademark without plaintiff's consent and with the intent of disposing of personal property.

124.   Defendants CustomVine, Penrose Hill, Rack & Riddle, Time and Does 1 through 5 used the "Turnkey" fictitious business name without plaintiff's consent and with the intent of disposing of personal property.

125.   The use of the TURNKEY trademark and Turnkey fictitious business name by defendants CustomVine, Penrose Hill, Rack & Riddle, Time and Does 1 through 5 without plaintiff's consent (i) constituted the public dissemination of an untrue or misleading statement (ii) concerning the disposition of personal property, (iii) which was likely to deceive members of the public, and (iv) which defendants CustomVine, Penrose Hill, Rack & Riddle, Time and Does 1 through 5

knew, or in the exercise of reasonable care should have known, was untrue or misleading and likely to deceive members of the public.

126. As a result of the false advertising of defendants CustomVine, Penrose Hill, Rack & Riddle, Time and Does 1 through 5, plaintiff has been damaged, and is entitled to injunctive relief under California Business and Professions Code section 17535.

## Sixth Claim for Relief

### For Contributory Trademark Infringement (TURN KEY)

### Against Defendants Kevin Boyer, CustomVine and Does 6-10

127. Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 79.

128. Defendants Penrose Hill, Rack & Riddle, Time and Does 1 through 5 infringed on plaintiff's TURN KEY trademark as alleged in the Second Claim for Relief.

129. Defendants Kevin Boyer, CustomVine and Does 6 through 10 intentionally induced defendants Penrose Hill, Rack & Riddle, Time and Does 1 through 5 to infringe on plaintiff's TURN KEY trademark by encouraging and assisting defendants Penrose Hill, Rack & Riddle, Time and Does 1 through 5 to obtain and use a COLA for the TURNKEY mark, notwithstanding that Mr. Boyer, CustomVine and Does 6 through 10 knew of plaintiff's TURN KEY trademark and knew or reasonably should have known that the TURNKEY trademark was a "reproduction, counterfeit, copy, or colorable imitation of" plaintiff's TURN KEY trademark and was likely to cause confusion or mistake, or to deceive.

130. As a result of defendants Kevin Boyer, CustomVine and Does 6 through 10 having intentionally induced defendants Penrose Hill, Rack & Riddle, Time and Does 1 through 5 to infringe on plaintiff's TURN KEY trademark, plaintiff has been damaged and is entitled to recover money damages under 15 U.S.C. § 1117(a).

131.  This is an "exceptional case", entitling plaintiff to an award of attorney fees under the last sentence of 15 U.S.C. § 1117(a).

### Seventh Claim for Relief

**For Vicarious Trademark Infringement (TURN KEY)**

**Against Defendants CustomVine, Penrose Hill, Rack & Riddle,**

**Time and Does 1-5**

132.  Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 79.

133.  At all times relevant to this lawsuit, defendants CustomVine, Penrose Hill, Rack & Riddle, Time and Does 1 through 5 had an apparent or actual partnership, and had authority to bind one another in transactions with third parties or to exercise joint ownership or control over the products bearing the infringing TURNKEY mark. As a result, each of the defendants CustomVine, Penrose Hill, Rack & Riddle, Time and Does 1 through 5 is each vicariously liable for the infringing conduct of each of the other defendants.

134.  As a result of defendants' vicarious trademark infringement, plaintiff has been damaged and is entitled to recover money damages under 15 U.S.C. § 1117(a).

135.  This is an "exceptional case", entitling plaintiff to an award of attorney fees under the last sentence of 15 U.S.C. § 1117(a).

### Eighth Claim for Relief

**For Vicarious Liability Against Defendant Time**

136.  Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 79.

137.  At all times relevant to this lawsuit, defendants Time and Penrose Hill were in a licensor-licensee relationship with respect to Time's Firstleaf wine club, which Penrose Hill operated as Time's licensee.

138.   At all times relevant to this lawsuit, the Firstleaf wine club sold wines to the public bottled under the infringing TURNKEY trademark.

139.   Under the licensor-licensee arrangement between Time and Penrose Hill, Time exercised sufficient control over Penrose Hill's operation of the Firstleaf wine club to render Time vicariously liable for Penrose Hill's sale of infringing products through the club.

140.   Plaintiff has been damaged by Penrose Hill's sale of wines bottled under the infringing TURNKEY trademark, as alleged in the second through seventh claims for relief.

141.   To the extent that plaintiff has been damaged by Penrose Hill's sale of wines bottled under the infringing TURNKEY trademark through the Firstleaf wine club, defendant Time is vicariously liable to plaintiff for all such damages.

**CLAIMS FOR RELIEF AS TO PLAINTIFF'S**

**WAYSIDE TRADEMARK**

**(Ninth through Fourteenth Claims for Relief)**

**<u>Ninth Claim for Relief</u>**

**For Trademark Infringement (15 U.S.C. § 1114(1)(a)) (WAYSIDE)**

**Against Defendants CustomVine, L18, A W Direct,**

**Spelletich, Plata Wine Partners and Does 1-5**

142.   Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 76.

143.   Plaintiff's WAYSIDE trademark is a "registered mark" for purposes of 15 U.S.C. § 1114(1)(a) and as defined in 15 U.S.C. § 1127.

144.   The WAYSIDE trademark used by defendants CustomVine, L18, A W Direct, Plata Wine Partners and Does 1 through 5 is a "reproduction, counterfeit, copy, or colorable imitation of" plaintiff's WAYSIDE trademark for purposes of 15 U.S.C. § 1114(1)(a) and as defined in 15 U.S.C. § 1127.

145. Both plaintiff's WAYSIDE trademark and the WAYSIDE trademark used by defendants CustomVine, L18, A W Direct, Spelletich, Plata Wine Partners and Does 1 through 5 are used as names for wine.

146. Without plaintiff's consent, defendants CustomVine, L18, A W Direct, Plata Wine Partners and Does 1 through 5 used the WAYSIDE trademark "in commerce" for purposes of 15 U.S.C. § 1114(1)(a) and as defined in 15 U.S.C. § 1127.

147. Without plaintiff's consent, defendants CustomVine, L18, A W Direct, Spelletich, Plata Wine Partners and Does 1 through 5 used WAYSIDE trademark in connection with the sale, offering for sale, distribution, or advertising of goods or services for purposes of 15 U.S.C. § 1114(1)(a).

148. The use of the WAYSIDE trademark by defendants CustomVine, L18, A W Direct, Spelletich, Plata Wine Partners and Does 1 through 5 is likely to cause confusion or mistake, or to deceive, because of the WAYSIDE trademark's confusing similarity to plaintiff's WAYSIDE trademark, for purposes of 15 U.S.C. § 1114(1)(a).

149. As a result of the use of the WAYSIDE trademark by defendants CustomVine, L18, A W Direct, Spelletich, Plata Wine Partners and Does 1 through 5, plaintiff has been damaged and is entitled to recover money damages under 15 U.S.C. § 1117(a).

150. This is an "exceptional case", entitling plaintiff to an award of attorney fees under the last sentence of 15 U.S.C. § 1117(a).

151. As a result of the use of the WAYSIDE trademark by defendants CustomVine, L18, A W Direct, Spelletich, Plata Wine Partners and Does 1 through 5, plaintiff is entitled to injunctive relief under 15 U.S.C. § 1116.

/ / /

/ / /

**COMPLAINT RE BREACH OF CONTRACT, TRADEMARK INFRINGEMENT AND COUNTERFEITING, FALSE ADVERTISING, VICARIOUS INFRINGEMENT AND LIABILITY**

## Tenth Claim for Relief

## For Trademark Counterfeiting (15 U.S.C. § 1114(1)(b)) (WAYSIDE)

## Against Defendants CustomVine, L18, A W Direct,

## Spelletich, Plata Wine Partners and Does 1-5

152.   Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 76.

153.   Plaintiff's WAYSIDE trademark is a "registered mark" for purposes of 15 U.S.C. § 1114(1)(b) and as defined in 15 U.S.C. § 1127.

154.   The WAYSIDE trademark used by defendants CustomVine, L18, A W Direct, Spelletich, Plata Wine Partners and Does 1 through 5 "reproduce[s], counterfeit[s], cop[ies], or colorably imitate[s]" plaintiff's WAYSIDE trademark for purposes of 15 U.S.C. § 1114(1)(b) and as defined in 15 U.S.C. § 1127.

155.   The WAYSIDE trademark used by defendants CustomVine, L18, A W Direct, Spelletich, Plata Wine Partners and Does 1 through 5 is a counterfeit mark as defined in 15 U.S.C. § 1116(d)(1)(B).

156.   Both plaintiff's WAYSIDE trademark and the WAYSIDE trademark used by defendants CustomVine, L18, A W Direct, Spelletich, Plata Wine Partners and Does 1 through 5 are used as names for wine.

157.   Without plaintiff's consent, defendants CustomVine, L18, A W Direct, Spelletich, Plata Wine Partners and Does 1 through 5 applied the WAYSIDE trademark to labels, signs, prints, packages, wrappers, receptacles and/or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution or advertising of goods, for purposes of 15 U.S.C. § 1114(1)(b).

158.   The use of the WAYSIDE trademark by defendants CustomVine, L18, A W Direct, Spelletich, Plata Wine Partners and Does 1 through 5 was likely to cause confusion or mistake, or to deceive, because of its confusing similarity to plaintiff's WAYSIDE trademark, for purposes of 15 U.S.C. § 1114(1)(b).

159.   When defendants CustomVine, L18, A W Direct, Spelletich, Plata Wine Partners and Does 1 through 5 applied the WAYSIDE trademark to labels, signs, prints, packages, receptacles and advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods, those defendants intended or knew that the WAYSIDE trademark would cause confusion or mistake, or to deceive.

160.   As a result of the use of the WAYSIDE trademark by defendants CustomVine, L18, A W Direct, Spelletich, Plata Wine Partners and Does 1 through 5, plaintiff has been damaged and is entitled to recover money damages under 15 U.S.C. § 1117(a).

161.   In the alternative to the relief sought in the preceding paragraph, plaintiff may seek statutory damages under 15 U.S.C. § 1117(c).

162.   This is an "exceptional case", entitling plaintiff to an award of attorney fees under the last sentence of 15 U.S.C. § 1117(a).

163.   As a result of the use of the WAYSIDE trademark by defendants L18, A W Direct, Spelletich, Plata Wine Partners and Does 1 through 5, plaintiff is entitled to injunctive relief under 15 U.S.C. § 1116.

164.   Defendants L18, A W Direct, Spelletich, Plata Wine Partners and Does 1 through 5 intentionally used the WAYSIDE trademark, knowing that it was a counterfeit mark as defined in 15 U.S.C. § 1116(d), in connection with the sale, offering for sale, or distribution of goods. As a result, plaintiff is entitled to treble damages and prejudgment interest under 15 U.S.C. § 1117(b).

## Eleventh Claim for Relief

**For Unfair Competition (15 U.S.C. § 1125(a)(1)(A)) (WAYSIDE)**

**Against Defendants CustomVine, L18, A W Direct,**

**Spelletich, Plata Wine Partners and Does 1-5**

165.   Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 76.

34

166.   At all times relevant to this lawsuit, plaintiff has had a protectable interest in the WAYSIDE trademark.

167.   The WAYSIDE trademark used by defendants CustomVine, L18, A W Direct, Spelletich, Plata Wine Partners and Does 1 through 5 is confusingly similar to plaintiff's WAYSIDE trademark.

168.   Both plaintiff's WAYSIDE trademark and the WAYSIDE trademark used by defendants CustomVine, L18, A W Direct, Spelletich, Plata Wine Partners and Does 1 through 5 are used as names for wine.

169.   Without plaintiff's consent, defendants CustomVine, L18, A W Direct, Spelletich, Plata Wine Partners and Does 1 through 5 used the WAYSIDE trademark in commerce in connection with goods or services. These defendants' use of the WAYSIDE trademark was and is likely to cause confusion or mistake, or to deceive as to: (a) the affiliation, connection, or association of defendants CustomVine, L18, A W Direct, Spelletich, Plata Wine Partners and Does 1 through 5 with plaintiff; or (b) the origin, sponsorship, or approval of these defendants' goods, services or commercial activities by plaintiff.

170.   Without plaintiff's consent, defendants CustomVine, L18, A W Direct, Spelletich, Plata Wine Partners and Does 1 through 5 used the WAYSIDE trademark in commerce in connection with commercial advertising or promotion. The use of the WAYSIDE trademark by these defendants misrepresented the nature, characteristics, qualities, and/or geographic origin of their goods.

171.   As a result of the use of the WAYSIDE trademark as described in this claim for relief by defendants CustomVine, L18, A W Direct, Spelletich, Plata Wine Partners and Does 1 through 5, plaintiff has been damaged and is entitled to recover money damages under 15 U.S.C. § 1117(a).

172.   As a result of the use of the WAYSIDE trademark by defendants CustomVine, L18, A W Direct, Spelletich, Plata Wine Partners and Does 1

**COMPLAINT RE BREACH OF CONTRACT, TRADEMARK INFRINGEMENT AND COUNTERFEITING, FALSE ADVERTISING, VICARIOUS INFRINGEMENT AND LIABILITY**

through 5 as described in this claim for relief, plaintiff also is entitled to injunctive relief under 15 U.S.C. § 1116.

### Twelfth Claim for Relief

**For False Advertising (Cal. Bus. & Prof. Code, § 17500) (WAYSIDE)**

**Against Defendants CustomVine, L18, A W Direct,**

**Spelletich, Plata Wine Partners and Does 1-5**

173.   Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 79.

174.   At all times relevant to this lawsuit, plaintiff has had a protectable interest in the WAYSIDE trademark.

175.   The WAYSIDE trademark used by defendants CustomVine, L18, A W Direct, Spelletich, Plata Wine Partners and Does 1 through 5 is confusingly similar to plaintiff's WAYSIDE trademark.

176.   Defendants CustomVine, L18, A W Direct, Spelletich, Plata Wine Partners and Does 1 through 5 used the WAYSIDE trademark without plaintiff's consent and with the intent of disposing of personal property.

177.   The use of the WAYSIDE trademark by defendants CustomVine, L18, A W Direct, Spelletich, Plata Wine Partners and Does 1 through 5 without plaintiff's consent (i) constituted the public dissemination of an untrue or misleading statement (ii) concerning the disposition of personal property, (iii) which was likely to deceive members of the public, and (iv) which defendants CustomVine, L18, A W Direct, Spelletich, Plata Wine Partners and Does 1 through 5 knew, or in the exercise of reasonable care should have known, was untrue or misleading and likely to deceive members of the public.

178.   As a result of the false advertising of defendants CustomVine, L18, A W Direct, Spelletich, Plata Wine Partners and Does 1 through 5, plaintiff has been damaged, and is entitled to injunctive relief under California Business and Professions Code section 17535.

36

**Thirteenth Claim for Relief**

**For Contributory Trademark Infringement (WAYSIDE)**

**Against Defendants Kevin Boyer, CustomVine and Does 6-10**

179. Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 79.

180. Defendants L18, A W Direct, Plata Wine Partners and Does 1 through 5 infringed on plaintiff's WAYSIDE trademark as alleged in the Eighth Claim for Relief.

181. Defendants Kevin Boyer, CustomVine and Does 6 through 10 intentionally induced defendants L18, A W Direct, Plata Wine Partners and Does 1 through 5 to infringe on plaintiff's WAYSIDE trademark by encouraging and assisting defendants L18, A W Direct, Spelletich, Plata Wine Partners and Does 1 through 5 to obtain and use a COLA for the WAYSIDE trademark, notwithstanding that CustomVine and Does 6 through 10 knew of plaintiff's WAYSIDE trademark and knew or reasonably should have known that the WAYSIDE trademark was a "reproduction, counterfeit, copy, or colorable imitation of" plaintiff's WAYSIDE trademark and was likely to cause confusion or mistake, or to deceive.

182. As a result of defendants CustomVine and Does 6 through 10's intentionally inducing defendants L18, A W Direct, Spelletich, Plata Wine Partners and Does 1 through 5 to infringe on plaintiff's WAYSIDE trademark, plaintiff has been damaged and is entitled to recover money damages under 15 U.S.C. § 1117(a).

183. This is an "exceptional case", entitling plaintiff to an award of attorney fees under the last sentence of 15 U.S.C. § 1117(a).

/ / /

/ / /

**COMPLAINT RE BREACH OF CONTRACT, TRADEMARK INFRINGEMENT AND COUNTERFEITING, FALSE ADVERTISING, VICARIOUS INFRINGEMENT AND LIABILITY**

**Fourteenth Claim for Relief**

**For Vicarious Trademark Infringement (WAYSIDE)**

**Against Defendants CustomVine, L18, A W Direct, Plata Wine Partners,**

**Spelletich and Does 1 through 5**

184.   Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 79.

185.   At all times relevant to this lawsuit, defendants CustomVine, L18, A W Direct, Plata Wine Partners, Spelletich and Does 1 through 5 had an apparent or actual partnership, and had authority to bind one another in transactions with third parties or to exercise joint ownership or control over the products bearing the infringing WAYSIDE trademark. As a result, each of the defendants CustomVine, L18, A W Direct, Plata Wine Partners, Spelletich and Does 1 through 5 is each vicariously liable for the infringing conduct of each of the other defendants.

186.   As a result of defendants' vicarious trademark infringement, plaintiff has been damaged and is entitled to recover money damages under 15 U.S.C. § 1117(a).

187.   This is an "exceptional case", entitling plaintiff to an award of attorney fees under the last sentence of 15 U.S.C. § 1117(a).

**CLAIMS FOR RELIEF AS TO PLAINTIFF'S**

**COMPASS POINT TRADEMARK**

**(Fifteenth through Twentieth Claims for Relief)**

**Fifteenth Claim for Relief**

**For Trademark Infringement (15 U.S.C. § 1114(1)(a)) (COMPASS POINT)**

**Against Defendants CustomVine, L18, A W Direct, Spelletich and Does 1-5**

188.   Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 76.

189.   Plaintiff's COMPASS POINT trademark is a "registered mark" for purposes of 15 U.S.C. § 1114(1)(a) and as defined in 15 U.S.C. § 1127.

190.   The COMPASS POINT trademark used by defendants CustomVine, L18, A W Direct, Spelletich and Does 1 through 5 is a "reproduction, counterfeit, copy, or colorable imitation of" plaintiff's COMPASS POINT trademark for purposes of 15 U.S.C. § 1114(1)(a) and as defined in 15 U.S.C. § 1127.

191.   Both plaintiff's COMPASS POINT trademark and the COMPASS POINT trademark used by defendants CustomVine, L18, A W Direct, Spelletich and Does 1 through 5 are used as names for wine.

192.   Without plaintiff's consent, defendants CustomVine, L18, A W Direct, Spelletich and Does 1 through 5 used the COMPASS POINT trademark "in commerce" for purposes of 15 U.S.C. § 1114(1)(a) and as defined in 15 U.S.C. § 1127.

193.   Without plaintiff's consent, defendants CustomVine, L18, A W Direct, Spelletich and Does 1 through 5 used COMPASS POINT trademark in connection with the sale, offering for sale, distribution, or advertising of goods or services for purposes of 15 U.S.C. § 1114(1)(a).

194.   The use of the COMPASS POINT trademark by defendants CustomVine, L18, A W Direct, Spelletich and Does 1 through 5 is likely to cause confusion or mistake, or to deceive, because of the COMPASS POINT trademark's confusing similarity to plaintiff's COMPASS POINT trademark. for purposes of 15 U.S.C. § 1114(1)(a).

195.   As a result of the use of the COMPASS POINT trademark by defendants CustomVine, L18, A W Direct, Spelletich and Does 1 through 5, plaintiff has been damaged and is entitled to recover money damages under 15 U.S.C. § 1117(a).

196.   This is an "exceptional case", entitling plaintiff to an award of attorney fees under the last sentence of 15 U.S.C. § 1117(a).

197.   As a result of the use of the COMPASS POINT trademark by defendants CustomVine, L18, A W Direct, Spelletich and Does 1 through 5, plaintiff is entitled to injunctive relief under 15 U.S.C. § 1116.

### Sixteenth Claim for Relief

**For Trademark Counterfeiting (15 U.S.C. § 1114(1)(b)) (COMPASS POINT)**

**Against Defendants CustomVine, L18, A W Direct and Does 1-5**

198.   Turn Key realleges and incorporates by reference the allegations of paragraphs 1 through 76.

199.   Plaintiff's COMPASS POINT trademark is a "registered mark" for purposes of 15 U.S.C. § 1114(1)(b) and as defined in 15 U.S.C. § 1127.

200.   The COMPASS POINT trademark used by defendants CustomVine, L18, A W Direct, Spelletich and Does 1 through 5 "reproduce[s], counterfeit[s], cop[ies], or colorably imitate[s]" plaintiff's COMPASS POINT trademark for purposes of 15 U.S.C. § 1114(1)(b) and as defined in 15 U.S.C. § 1127.

201.   The COMPASS POINT trademark used by defendants CustomVine, L18, A W Direct, Spelletich and Does 1 through 5 is a counterfeit mark as defined in 15 U.S.C. § 1116(d)(1)(B).

202.   Both plaintiff's COMPASS POINT trademark and the COMPASS POINT trademark used by defendants CustomVine, L18, A W Direct, Spelletich and Does 1 through 5 are used as names for wine.

203.   Without plaintiff's consent, defendants CustomVine, L18, A W Direct, Spelletich and Does 1 through 5 applied the COMPASS POINT trademark to labels, signs, prints, packages, wrappers, receptacles and/or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods, for purposes of 15 U.S.C. § 1114(1)(b).

204.   The use of the COMPASS POINT trademark by defendants CustomVine, L18, A W Direct, Spelletich and Does 1 through 5 was likely to

cause confusion or mistake, or to deceive, because of its confusing similarity to plaintiff's COMPASS POINT trademark, for purposes of 15 U.S.C. § 1114(1)(b).

205. When defendants CustomVine, L18, A W Direct, Spelletich and Does 1 through 5 applied the COMPASS POINT trademark to labels, signs, prints, packages, wrappers, receptacles and/or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods, those defendants intended or knew that the COMPASS POINT trademark would cause confusion or mistake, or to deceive.

206. As a result of the use of the COMPASS POINT trademark by defendants CustomVine, L18, A W Direct, Spelletich and Does 1 through 5, plaintiff has been damaged and is entitled to recover money damages under 15 U.S.C. § 1117(a).

207. In the alternative to the relief sought in the preceding paragraph, plaintiff will seek statutory damages under 15 U.S.C. § 1117(c).

208. This is an "exceptional case", entitling plaintiff to an award of attorney fees under the last sentence of 15 U.S.C. § 1117(a).

209. As a result of the use of the COMPASS POINT trademark by defendants CustomVine, L18, A W Direct, Spelletich and Does 1 through 5, plaintiff is entitled to injunctive relief under 15 U.S.C. § 1116.

210. Defendants CustomVine, L18, A W Direct, Spelletich and Does 1 through 5 intentionally used the COMPASS POINT trademark, knowing that it was a counterfeit mark as defined in 15 U.S.C. § 1116(d), in connection with the sale, offering for sale, or distribution of goods. As a result, plaintiff is entitled to treble damages and prejudgment interest under 15 U.S.C. § 1117(b).

/ / /

/ / /

/ / /

/ / /

**COMPLAINT RE BREACH OF CONTRACT, TRADEMARK INFRINGEMENT AND COUNTERFEITING, FALSE ADVERTISING, VICARIOUS INFRINGEMENT AND LIABILITY**

**Seventeenth Claim for Relief**

**For Unfair Competition (15 U.S.C. § 1125(a)(1)(A)) (COMPASS POINT)**

**Against Defendants CustomVine, L18, A W Direct, Spelletich and Does 1-5**

211.   Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 76.

212.   At all times relevant to this lawsuit, plaintiff has had a protectable interest in the COMPASS POINT trademark.

213.   The COMPASS POINT trademark used by defendants CustomVine, L18, A W Direct, Spelletich and Does 1 through 5 is confusingly similar to plaintiff's COMPASS POINT trademark.

214.   Both plaintiff's COMPASS POINT trademark and the COMPASS POINT trademark used by defendants CustomVine, L18, A W Direct, Spelletich and Does 1 through 5 are used as names for wine.

215.   Without plaintiff's consent, defendants CustomVine, L18, A W Direct, Spelletich and Does 1 through 5 used the COMPASS POINT trademark in commerce in connection with goods or services. These defendants' use of the COMPASS POINT trademark was and is likely to cause confusion or mistake, or to deceive as to: (a) the affiliation, connection, or association of defendants L18, A W Direct, Spelletich and Does 1 through 5 with plaintiff; or (b) the origin, sponsorship, or approval of these defendants' goods, services or commercial activities by plaintiff.

216.   Without plaintiff's consent, defendants CustomVine, L18, A W Direct, Spelletich and Does 1 through 5 used the COMPASS POINT trademark in commerce in connection with commercial advertising or promotion. The use of the COMPASS POINT trademark by these defendants misrepresented the nature, characteristics, qualities, and/or geographic origin of their goods.

217.   As a result of the use of the COMPASS POINT trademark as described in this claim for relief by defendants CustomVine, L18, A W Direct,

Spelletich and Does 1 through 5, plaintiff has been damaged and is entitled to recover money damages under 15 U.S.C. § 1117(a).

218. As a result of the use of the COMPASS POINT trademark by defendants CustomVine, L18, A W Direct, Spelletich and Does 1 through 5 as described in this claim for relief, plaintiff also is entitled to injunctive relief under 15 U.S.C. § 1116.

## Eighteenth Claim for Relief

**For False Advertising (Cal. Bus. & Prof. Code, § 17500) (COMPASS POINT)**

**Against Defendants CustomVine, L18, A W Direct, Spelletich and Does 1-5**

219. Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 79.

220. At all times relevant to this lawsuit, plaintiff has had a protectable interest in the COMPASS POINT trademark.

221. The COMPASS POINT trademark used by defendants CustomVine, L18, A W Direct, Spelletich and Does 1 through 5 is confusingly similar to plaintiff's COMPASS POINT trademark.

222. Defendants CustomVine, L18, A W Direct, Spelletich and Does 1 through 5 used the COMPASS POINT trademark without plaintiff's consent and with the intent of disposing of personal property.

223. The use of the COMPASS POINT trademark by defendants CustomVine, L18, A W Direct, Spelletich and Does 1 through 5 without plaintiff's consent (i) constituted the public dissemination of an untrue or misleading statement (ii) concerning the disposition of personal property, (iii) which was likely to deceive members of the public, and (iv) which defendants CustomVine, L18, A W Direct, Spelletich and Does 1 through 5 knew, or in the exercise of reasonable care should have known, was untrue or misleading and likely to deceive members of the public.

224.   As a result of the false advertising of defendants CustomVine, L18, A W Direct, Spelletich and Does 1 through 5, plaintiff has been damaged, and is entitled to injunctive relief under California Business and Professions Code section 17535.

## Nineteenth Claim for Relief

### For Contributory Trademark Infringement (COMPASS POINT)

### Against Defendants Kevin Boyer, CustomVine and Does 6-10

225.   Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 79.

226.   Defendants L18, A W Direct, Spelletich and Does 1 through 5 infringed on plaintiff's COMPASS POINT trademark as alleged in the Fourteenth Claim for Relief.

227.   Defendants Kevin Boyer, CustomVine and Does 6 through 10 intentionally induced defendants L18, A W Direct, Spelletich and Does 1 through 5 to infringe on plaintiff's COMPASS POINT trademark by encouraging and assisting defendants L18, A W Direct, Spelletich and Does 1 through 5 to obtain and use a COLA for the COMPASS POINT trademark, notwithstanding that CustomVine and Does 6 through 10 knew of plaintiff's COMPASS POINT trademark and knew or reasonably should have known that the COMPASS POINT trademark was a "reproduction, counterfeit, copy, or colorable imitation of" plaintiff's COMPASS POINT trademark and was likely to cause confusion or mistake, or to deceive.

228.   As a result of defendants Kevin Boyer, CustomVine and Does 6 through 10's intentionally inducing defendants L18, A W Direct, Spelletich and Does 1 through 5 to infringe on plaintiff's COMPASS POINT trademark, plaintiff has been damaged and is entitled to recover money damages under 15 U.S.C. § 1117(a).

**COMPLAINT RE BREACH OF CONTRACT, TRADEMARK INFRINGEMENT AND COUNTERFEITING, FALSE ADVERTISING, VICARIOUS INFRINGEMENT AND LIABILITY**

229.  This is an "exceptional case", entitling plaintiff to an award of attorney fees under the last sentence of 15 U.S.C. § 1117(a).

**Twentieth Claim for Relief**

**For Vicarious Trademark Infringement (COMPASS POINT)**

**Against Defendants CustomVine, L18, A W Direct,**

**and Does 1 through 5**

230.  Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 79.

231.  At all times relevant to this lawsuit, defendants CustomVine, L18, A W Direct, Spelletich and Does 1 through 5 had an apparent or actual partnership, and had authority to bind one another in transactions with third parties or to exercise joint ownership or control over the products bearing the infringing COMPASS POINT trademark. As a result, each of the defendants CustomVine, L18, A W Direct, Spelletich and Does 1 through 5 is each vicariously liable for the infringing conduct of each of the other defendants.

232.  As a result of defendants' vicarious trademark infringement, plaintiff has been damaged and is entitled to recover money damages under 15 U.S.C. § 1117(a).

233.  This is an "exceptional case", entitling plaintiff to an award of attorney fees under the last sentence of 15 U.S.C. § 1117(a).

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**COMPLAINT RE BREACH OF CONTRACT, TRADEMARK INFRINGEMENT AND COUNTERFEITING, FALSE ADVERTISING, VICARIOUS INFRINGEMENT AND LIABILITY**

**CLAIMS FOR RELIEF AS TO PLAINTIFF'S**

**ELEANORA MARIE TRADEMARK**

**(Twenty-First through Twenty-Sixth Claims for Relief)**

**<u>Twenty-First Claim for Relief</u>**

**For Trademark Infringement (15 U.S.C. § 1114(1)(a))**

**(ELEANORA MARIE)**

**Against Defendants CustomVine, L18, A W Direct, Spelletich,**

**Gregg & Gregg and Does 1-5**

234.   Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 76.

235.   Plaintiff's ELEANORA MARIE trademark is a "registered mark" for purposes of 15 U.S.C. § 1114(1)(a) and as defined in 15 U.S.C. § 1127.

236.   The ELEANORA MARIE trademark used by defendants CustomVine, L18, A W Direct, Spelletich, Gregg & Gregg and Does 1 through 5 is a "reproduction, counterfeit, copy, or colorable imitation of" plaintiff's ELEANORA MARIE trademark for purposes of 15 U.S.C. § 1114(1)(a) and as defined in 15 U.S.C. § 1127.

237.   Both plaintiff's ELEANORA MARIE trademark and the ELEANORA MARIE trademark used by defendants CustomVine, L18, A W Direct, Spelletich, Gregg & Gregg and Does 1 through 5 are used as names for wine.

238.   Without plaintiff's consent, defendants CustomVine, L18, A W Direct, Spelletich, Gregg & Gregg and Does 1 through 5 used the ELEANORA MARIE trademark "in commerce" for purposes of 15 U.S.C. § 1114(1)(a) and as defined in 15 U.S.C. § 1127.

239.   Without plaintiff's consent, defendants CustomVine, L18, A W Direct, Spelletich, Gregg & Gregg and Does 1 through 5 used the ELEANORA

MARIE trademark in connection with the sale, offering for sale, distribution, or advertising of goods or services for purposes of 15 U.S.C. § 1114(1)(a).

240. The use of the ELEANORA MARIE trademark by defendants CustomVine, L18, A W Direct, Spelletich, Gregg & Gregg and Does 1 through 5 is likely to cause confusion or mistake, or to deceive, because of the COMPASS POINT trademark's confusing similarity to plaintiff's ELEANORA MARIE, trademark for purposes of 15 U.S.C. § 1114(1)(a).

241. As a result of the use of the ELEANORA MARIE trademark by defendants CustomVine, L18, A W Direct, Spelletich, Gregg & Gregg and Does 1 through 5, plaintiff has been damaged and is entitled to recover money damages under 15 U.S.C. § 1117(a).

242. This is an "exceptional case", entitling plaintiff to an award of attorney fees under the last sentence of 15 U.S.C. § 1117(a).

243. As a result of the use of the ELEANORA MARIE trademark by defendants CustomVine, L18, A W Direct, Spelletich, Gregg & Gregg and Does 1 through 5, plaintiff is entitled to injunctive relief under 15 U.S.C. § 1116.

## **Twenty-Second Claim for Relief**

### **For Trademark Counterfeiting (15 U.S.C. § 1114(1)(b))**

### **(ELEANORA MARIE)**

### **Against Defendants CustomVine, L18, A W Direct,**

### **Spelletich, Gregg & Gregg and Does 1-5**

244. Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 76.

245. Plaintiff's ELEANORA MARIE trademark is a "registered mark" for purposes of 15 U.S.C. § 1114(1)(b) and as defined in 15 U.S.C. § 1127.

246. The ELEANORA MARIE trademark used by defendants CustomVine, L18, A W Direct, Spelletich, Gregg & Gregg and Does 1 through 5 "reproduce[s], counterfeit[s], cop[ies], or colorably imitate[s]" plaintiff's

ELEANORA MARIE trademark for purposes of 15 U.S.C. § 1114(1)(b) and as defined in 15 U.S.C. § 1127.

247. The ELEANORA MARIE trademark used by defendants CustomVine, L18, A W Direct, Spelletich, Gregg & Gregg and Does 1 through 5 is a counterfeit mark as defined in 15 U.S.C. § 1116(d)(1)(B).

248. Both plaintiff's ELEANORA MARIE trademark and the ELEANORA MARIE trademark used by defendants CustomVine, L18, A W Direct, Spelletich, Gregg & Gregg and Does 1 through 5 are used as names for wine.

249. Without plaintiff's consent, defendants CustomVine, L18, A W Direct, Spelletich, Gregg & Gregg and Does 1 through 5 applied the ELEANORA MARIE trademark to labels, signs, prints, packages, wrappers, receptacles and/or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods, for purposes of 15 U.S.C. § 1114(1)(b).

250. The use of the ELEANORA MARIE trademark by defendants CustomVine, L18, A W Direct, Spelletich, Gregg & Gregg and Does 1 through 5 was likely to cause confusion or mistake, or to deceive, because of its confusing similarity to plaintiff's ELEANORA MARIE trademark for purposes of 15 U.S.C. § 1114(1)(b).

251. When defendants CustomVine, L18, A W Direct, Spelletich, Gregg & Gregg and Does 1 through 5 applied the ELEANORA MARIE trademark to labels, signs, prints, packages, wrappers, receptacles and/or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods, those defendants intended or knew that the ELEANORA MARIE trademark would cause confusion or mistake, or to deceive.

**COMPLAINT RE BREACH OF CONTRACT, TRADEMARK INFRINGEMENT AND COUNTERFEITING, FALSE ADVERTISING, VICARIOUS INFRINGEMENT AND LIABILITY**

252.  As a result of the use of the ELEANORA MARIE trademark by defendants CustomVine, L18, A W Direct, Spelletich, Gregg & Gregg and Does 1 through 5, plaintiff has been damaged and is entitled to recover money damages under 15 U.S.C. § 1117(a).

253.  In the alternative to the relief sought in the preceding paragraph, plaintiff will seek statutory damages under 15 U.S.C. § 1117(c).

254.  This is an "exceptional case", entitling plaintiff to an award of attorney fees under the last sentence of 15 U.S.C. § 1117(a).

255.  As a result of the use of the ELEANORA MARIE trademark by defendants CustomVine, L18, A W Direct, Spelletich, Gregg & Gregg and Does 1 through 5, plaintiff is entitled to injunctive relief under 15 U.S.C. § 1116.

256.  Defendants CustomVine, L18, A W Direct, Spelletich, Gregg & Gregg and Does 1 through 5 intentionally used the ELEANORA MARIE trademark, knowing that it was a counterfeit mark as defined in 15 U.S.C. § 1116(d), in connection with the sale, offering for sale or distribution of goods. As a result, plaintiff is entitled to treble damages and prejudgment interest under 15 U.S.C. § 1117(b).

### Twenty-Third Claim for Relief

**For Unfair Competition (15 U.S.C. § 1125(a)(1)(A)) (ELEANORA MARIE)**

**Against Defendants CustomVine, L18, A W Direct,**

**Spelletich, Gregg & Gregg and Does 1-5**

257.  Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 76.

258.  At all times relevant to this lawsuit, plaintiff has had a protectable interest in the ELEANORA MARIE trademark.

259.  The ELEANORA MARIE trademark used by defendants CustomVine, L18, A W Direct, Spelletich, Gregg & Gregg and Does 1 through 5 is confusingly similar to plaintiff's ELEANORA MARIE trademark.

49

260. Both plaintiff's ELEANORA MARIE trademark and the ELEANORA MARIE trademark used by defendants CustomVine, L18, A W Direct, Spelletich, Gregg & Gregg and Does 1 through 5 are used as names for wine.

261. Without plaintiff's consent, defendants CustomVine, L18, A W Direct, Spelletich, Gregg & Gregg and Does 1 through 5 used the ELEANORA MARIE trademark in commerce in connection with goods or services. These defendants' use of the ELEANORA MARIE trademark was and is likely to cause confusion or mistake, or to deceive as to: (a) the affiliation, connection, or association of defendants CustomVine, L18, A W Direct, Spelletich, Gregg & Gregg and Does 1 through 5 with plaintiff; or (b) the origin, sponsorship, or approval of these defendants' goods, services or commercial activities by plaintiff.

262. Without plaintiff's consent, defendants CustomVine, L18, A W Direct, Spelletich, Gregg & Gregg and Does 1 through 5 used the ELEANORA MARIE trademark in commerce in connection with commercial advertising or promotion. The use of the ELEANORA MARIE trademark by these defendants misrepresented the nature, characteristics, qualities, and/or geographic origin of their goods.

263. As a result of the use of the ELEANORA MARIE trademark as described in this claim for relief by defendants CustomVine, L18, A W Direct, Spelletich, Gregg & Gregg and Does 1 through 5, plaintiff has been damaged and is entitled to recover money damages under 15 U.S.C. § 1117(a).

264. As a result of the use of the ELEANORA MARIE trademark by defendants CustomVine, L18, A W Direct, Spelletich, Gregg & Gregg and Does 1 through 5 as described in this claim for relief, plaintiff also is entitled to injunctive relief under 15 U.S.C. § 1116.

/ / /

/ / /

50

COMPLAINT RE BREACH OF CONTRACT, TRADEMARK INFRINGEMENT AND
COUNTERFEITING, FALSE ADVERTISING, VICARIOUS INFRINGEMENT AND LIABILITY

**Twenty-Fourth Claim for Relief**

**For False Advertising (Cal. Bus. & Prof. Code, § 17500)**

**(ELEANORA MARIE)**

**Against Defendants CustomVine, L18, A W Direct,**

**Spelletich, Gregg & Gregg and Does 1-5**

265.  Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 79.

266.  At all times relevant to this lawsuit, plaintiff has had a protectable interest in the ELEANORA MARIE trademark.

267.  The ELEANORA MARIE trademark used by defendants CustomVine, L18, A W Direct, Spelletich, Gregg & Gregg and Does 1 through 5 is confusingly similar to plaintiff's ELEANORA MARIE trademark.

268.  Defendants CustomVine, L18, A W Direct, Spelletich, Gregg & Gregg and Does 1 through 5 used the ELEANORA MARIE trademark without plaintiff's consent and with the intent of disposing of personal property.

269.  The use of the ELEANORA MARIE trademark by defendants CustomVine, L18, A W Direct, Spelletich, Gregg & Gregg and Does 1 through 5 without plaintiff's consent (i) constituted the public dissemination of an untrue or misleading statement (ii) concerning the disposition of personal property, (iii) which was likely to deceive members of the public, and (iv) which defendants CustomVine, L18, A W Direct, Spelletich, Gregg & Gregg and Does 1 through 5 knew, or in the exercise of reasonable care should have known, was untrue or misleading and likely to deceive members of the public.

270.  As a result of the false advertising of defendants CustomVine, L18, A W Direct, Spelletich, Gregg & Gregg and Does 1 through 5, plaintiff has been damaged, and is entitled to injunctive relief under California Business and Professions Code section 17535.

**<u>Twenty-Fifth Claim for Relief</u>**

**For Contributory Trademark Infringement (ELEANORA MARIE)**

**Against Defendants Kevin Boyer, CustomVine and Does 6-10**

271.   Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 79.

272.   Defendants L18, A W Direct, Spelletich, Gregg & Gregg and Does 1 through 5 infringed on plaintiff's ELEANORA MARIE trademark as alleged in the Twentieth Claim for Relief.

273.   Defendants Kevin Boyer, CustomVine and Does 6 through 10 intentionally induced defendants L18, A W Direct, Spelletich, Gregg & Gregg and Does 1 through 5 to infringe on plaintiff's ELEANORA MARIE trademark by encouraging and assisting defendants L18, A W Direct, Spelletich, Gregg & Gregg and Does 1 through 5 to obtain and use a COLA for the ELEANORA MARIE trademark, notwithstanding that CustomVine and Does 6 through 10 knew of plaintiff's ELEANORA MARIE trademark and knew or reasonably should have known that the ELEANORA MARIE trademark was a "reproduction, counterfeit, copy, or colorable imitation of" plaintiff's ELEANORA MARIE trademark and was likely to cause confusion or mistake, or to deceive.

274.   As a result of defendants Kevin Boyer, CustomVine and Does 6 through 10's intentionally inducing defendants L18, A W Direct, Spelletich, Gregg & Gregg and Does 1 through 5 to infringe on plaintiff's ELEANORA MARIE trademark, plaintiff has been damaged and is entitled to recover money damages under 15 U.S.C. § 1117(a).

275.   This is an "exceptional case", entitling plaintiff to an award of attorney fees under the last sentence of 15 U.S.C. § 1117(a).

/ / /

/ / /

/ / /

**Twenty-Sixth Claim for Relief**

**For Vicarious Trademark Infringement (ELEANORA MARIE)**

**Against Defendants CustomVine, L18, A W Direct,**

**Spelletich, Gregg & Gregg and Does 1 through 5**

276.  Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 79.

277.  At all times relevant to this lawsuit, defendants CustomVine, L18, A W Direct, Spelletich, Gregg & Gregg and Does 1 through 5 had an apparent or actual partnership, and had authority to bind one another in transactions with third parties or to exercise joint ownership or control over the products bearing the infringing ELEANORA MARIE trademark. As a result, each of the defendants CustomVine, L18, A W Direct, Spelletich, Gregg & Gregg and Does 1 through 5 is each vicariously liable for the infringing conduct of each of the other defendants.

278.  As a result of defendants' vicarious trademark infringement, plaintiff has been damaged and is entitled to recover money damages under 15 U.S.C. § 1117(a).

279.  This is an "exceptional case", entitling plaintiff to an award of attorney fees under the last sentence of 15 U.S.C. § 1117(a).

**DEMAND FOR JUDGMENT**

WHEREFORE, plaintiff requests this Court to enter judgment in its favor and against defendants as follows:

**ON THE FIRST CLAIM FOR RELIEF, FOR BREACH OF CONTRACT, AGAINST DEFENDANT CUSTOMVINE:**

A.    For damages in an amount in excess of the jurisdictional limit according to proof.

B.    For such other relief as the Court deems proper.

**ON THE SECOND CLAIM FOR RELIEF, FOR TRADEMARK INFRINGEMENT, AGAINST DEFENDANTS CUSTOMVINE, PENROSE HILL, RACK & RIDDLE, TIME, AND DOES 1 THROUGH 5:**

A.      For damages in an amount to be determined under 15 U.S.C. § 1117(a).

B.      For "exceptional case" attorney fees under 15 U.S.C. § 1117(a).

C.      For injunctive relief under 15 U.S.C. § 1116:

*(i)* prohibiting CustomVine, Penrose Hill, Rack & Riddle, Time and Does 1 through 5 from violating any right of plaintiff in the TURN KEY trademark (U.S.P.T.O. Reg. No. 4,165,358), and from violating 15 U.S.C. § 1125(a), (c), or (d); and

*(ii)* directing CustomVine, Penrose Hill, Rack & Riddle, Time and Does 1 through 5 to file with the court and serve on plaintiff, within 30 days after the service of the injunction, a report in writing under oath setting forth in detail the manner and form in which each defendant has complied with the injunction.

D.      For such other relief as the Court deems proper.

**ON THE THIRD CLAIM FOR RELIEF, FOR TRADEMARK COUNTERFEITING, AGAINST DEFENDANTS CUSTOMVINE, PENROSE HILL, RACK & RIDDLE, TIME, AND DOES 1 THROUGH 5:**

A.      For ***either (i)*** damages in an amount to be determined under 15 U.S.C. § 1117(a), plus "exceptional case" attorney fees; ***or, in the alternative (ii)*** statutory damages under 15 U.S.C. § 1117(c).

B.      For treble damages and prejudgment interest under 15 U.S.C. § 1117(b).

C.      For injunctive relief under 15 U.S.C. § 1116:

*(i)* prohibiting CustomVine, Penrose Hill, Rack & Riddle, Time and Does 1 through 5 from violating any right of plaintiff in the TURN KEY

**COMPLAINT RE BREACH OF CONTRACT, TRADEMARK INFRINGEMENT AND COUNTERFEITING, FALSE ADVERTISING, VICARIOUS INFRINGEMENT AND LIABILITY**

1  trademark (U.S.P.T.O. Reg. No. 4,165,358), and from violating 15 U.S.C. §
2  1125(a), (c), or (d); and

3      *(ii)* directing CustomVine, Penrose Hill, Rack & Riddle, Time and
4  Does 1 through 5 to file with the court and serve on plaintiff, within 30 days after
5  the service of the injunction, a report in writing under oath setting forth in detail
6  the manner and form in which each defendant has complied with the injunction.

7      D.    For such other relief as the Court deems proper.

8  **ON THE FOURTH CLAIM FOR RELIEF, FOR UNFAIR COMPETITION,**
9  **AGAINST DEFENDANTS CUSTOMVINE, PENROSE HILL, RACK &**
10  **RIDDLE, TIME, AND DOES 1 THROUGH 5:**

11     A.    For damages in an amount to be determined under 15 U.S.C. §
12  1117(a).

13     B.    For "exceptional case" attorney fees under 15 U.S.C. § 1117(a).

14     C.    For injunctive relief under 15 U.S.C. § 1116:

15     *(i)* prohibiting CustomVine, Penrose Hill, Rack & Riddle, Time and
16  Does 1 through 5 from violating any right of plaintiff in the TURN KEY
17  trademark (U.S.P.T.O. Reg. No. 4,165,358), and from violating 15 U.S.C. §
18  1125(a), (c), or (d); and

19     *(ii)* directing CustomVine, Penrose Hill, Rack & Riddle, Time and
20  Does 1 through 5 to file with the court and serve on plaintiff, within 30 days after
21  the service of the injunction, a report in writing under oath setting forth in detail
22  the manner and form in which each defendant has complied with the injunction.

23     D.    For such other relief as the Court deems proper.

24  **ON THE FIFTH CLAIM FOR RELIEF, FOR FALSE ADVERTISING,**
25  **AGAINST DEFENDANTS CUSTOMVINE, PENROSE HILL, RACK &**
26  **RIDDLE, TIME, AND DOES 1 THROUGH 5:**

27

28

**COMPLAINT RE BREACH OF CONTRACT, TRADEMARK INFRINGEMENT AND
COUNTERFEITING, FALSE ADVERTISING, VICARIOUS INFRINGEMENT AND LIABILITY**

For injunctive relief prohibiting CustomVine, Penrose Hill, Rack & Riddle, Time and Does 1 through 5 from using the TURNKEY trademark in violation of California Business and Professions Code section 17500.

## ON THE SIXTH CLAIM FOR RELIEF, FOR CONTRIBUTORY TRADEMARK INFRINGEMENT, AGAINST DEFENDANTS KEVIN BOYER, CUSTOMVINE AND DOES 6 THROUGH 10:

A.    For damages in an amount to be determined under 15 U.S.C. § 1117(a).

B.    For "exceptional case" attorney fees under 15 U.S.C. § 1117(a).

C.    For such other relief as the Court deems proper.

## ON THE SEVENTH CLAIM FOR RELIEF, FOR VICARIOUS TRADEMARK INFRINGEMENT, AGAINST DEFENDANTS CUSTOMVINE, PENROSE HILL, RACK & RIDDLE, TIME, AND DOES 1 THROUGH 5:

A.    For damages in an amount to be determined under 15 U.S.C. § 1117(a).

B.    For "exceptional case" attorney fees under 15 U.S.C. § 1117(a).

C.    For such other relief as the Court deems proper.

## ON THE EIGHTH CLAIM FOR RELIEF, FOR VICARIOUS LIABILITY, AGAINST DEFENDANT TIME:

For damages in an amount to be determined based on defendant Penrose Hill's liability.

## ON THE NINTH CLAIM FOR RELIEF, FOR TRADEMARK INFRINGEMENT, AGAINST DEFENDANTS CUSTOMVINE, L18, A W DIRECT, SPELLETICH, PLATA WINE PARTNERS, AND DOES 1-5:

A.    For damages in an amount to be determined under 15 U.S.C. § 1117(a).

B.    For "exceptional case" attorney fees under 15 U.S.C. § 1117(a).

C.  For injunctive relief under 15 U.S.C. § 1116:

*(i)* prohibiting CustomVine, L18, A W Direct, Spelletich, Plata Wine Partners and Does 1 through 5 from violating any right of plaintiff in the WAYSIDE trademark (U.S.P.T.O. Reg. No. 4,165,358), and from violating 15 U.S.C. § 1125(a), (c), or (d); and

*(ii)* directing CustomVine, L18, A W Direct, Spelletich, Plata Wine Partners and Does 1 through 5 to file with the court and serve on plaintiff, within 30 days after the service of the injunction, a report in writing under oath setting forth in detail the manner and form in which each defendant has complied with the injunction.

D.  For such other relief as the Court deems proper.

## ON THE TENTH CLAIM FOR RELIEF, FOR TRADEMARK COUNTERFEITING, AGAINST DEFENDANTS CUSTOMVINE, L18, A W DIRECT, SPELLETICH, PLATA WINE PARTNERS, AND DOES 1 THROUGH 5:

A.  For *either (i)* damages in an amount to be determined under 15 U.S.C. § 1117(a), plus "exceptional case" attorney fees; *or, in the alternative (ii)* statutory damages under 15 U.S.C. § 1117(c).

B.  For treble damages and prejudgment interest under 15 U.S.C. § 1117(b).

C.  For injunctive relief under 15 U.S.C. § 1116:

*(i)* prohibiting CustomVine, L18, A W Direct, Spelletich, Plata Wine Partners and Does 1 through 5 from violating any right of plaintiff in the WAYSIDE trademark (U.S.P.T.O. Reg. No. 4,165,358), and from violating 15 U.S.C. § 1125(a), (c), or (d); and

*(ii)* directing CustomVine, L18, A W Direct, Spelletich, Plata Wine Partners and Does 1 through 5 to file with the court and serve on plaintiff, within 30 days after the service of the injunction, a report in writing under oath setting

forth in detail the manner and form in which each defendant has complied with the injunction.

D.     For such other relief as the Court deems proper.

**ON THE ELEVENTH CLAIM FOR RELIEF, FOR UNFAIR COMPETITION, AGAINST DEFENDANTS CUSTOMVINE, L18, A W DIRECT, SPELLETICH, PLATA WINE PARTNERS, AND DOES 1 THROUGH 5:**

A.     For damages in an amount to be determined under 15 U.S.C. § 1117(a).

B.     For "exceptional case" attorney fees under 15 U.S.C. § 1117(a).

C.     For injunctive relief under 15 U.S.C. § 1116:

*(i)* prohibiting CustomVine, L18, A W Direct, Spelletich, Plata Wine Partners and Does 1 through 5 from violating any right of plaintiff in the WAYSIDE trademark (U.S.P.T.O. Reg. No. 4,165,358), and from violating 15 U.S.C. § 1125(a), (c), or (d); and

*(ii)* directing CustomVine, L18, A W Direct, Spelletich, Plata Wine Partners and Does 1 through 5 to file with the court and serve on plaintiff, within 30 days after the service of the injunction, a report in writing under oath setting forth in detail the manner and form in which each defendant has complied with the injunction.

D.     For such other relief as the Court deems proper.

**ON THE TWELFTH CLAIM FOR RELIEF, FOR FALSE ADVERTISING, AGAINST DEFENDANTS CUSTOMVINE, L18, A W DIRECT, SPELLETICH, PLATA WINE PARTNERS, AND DOES 1 THROUGH 5:**

For injunctive relief prohibiting Mr. Boyer, CustomVine, L18, A W Direct, Spelletich, Plata Wine Partners and Does 1 through 5 from using the WAYSIDE trademark in violation of California Business and Professions Code section 17500.

**ON THE THIRTEENTH CLAIM FOR RELIEF, FOR CONTRIBUTORY TRADEMARK INFRINGEMENT, AGAINST DEFENDANTS KEVIN BOYER, CUSTOMVINE AND DOES 6 THROUGH 10:**

A.   For damages in an amount to be determined under 15 U.S.C. § 1117(a).

B.   For "exceptional case" attorney fees under 15 U.S.C. § 1117(a).

C.   For such other relief as the Court deems proper.

**ON THE FOURTEENTH CLAIM FOR RELIEF, FOR VICARIOUS TRADEMARK INFRINGEMENT, AGAINST DEFENDANTS CUSTOMVINE, L18, A W DIRECT, SPELLETICH, PLATA WINE PARTNERS, AND DOES 1 THROUGH 5:**

A.   For damages in an amount to be determined under 15 U.S.C. § 1117(a).

B.   For "exceptional case" attorney fees under 15 U.S.C. § 1117(a).

C.   For such other relief as the Court deems proper.

**ON THE FIFTEENTH CLAIM FOR RELIEF, FOR TRADEMARK INFRINGEMENT, AGAINST DEFENDANTS CUSTOMVINE, L18, A W DIRECT, SPELLETICH, AND DOES 1-5:**

A.   For damages in an amount to be determined under 15 U.S.C. § 1117(a).

B.   For "exceptional case" attorney fees under 15 U.S.C. § 1117(a).

C.   For injunctive relief under 15 U.S.C. § 1116:

(*i*) prohibiting CustomVine, L18, A W Direct, Spelletich and Does 1 through 5 from violating any right of plaintiff in the COMPASS POINT trademark (U.S.P.T.O. Reg. No. 4,165,358), and from violating 15 U.S.C. § 1125(a), (c), or (d); and

59

**COMPLAINT RE BREACH OF CONTRACT, TRADEMARK INFRINGEMENT AND COUNTERFEITING, FALSE ADVERTISING, VICARIOUS INFRINGEMENT AND LIABILITY**

*(ii)* directing CustomVine, L18, A W Direct, Spelletich and Does 1 through 5 to file with the court and serve on plaintiff, within 30 days after the service of the injunction, a report in writing under oath setting forth in detail the manner and form in which each defendant has complied with the injunction.

D.    For such other relief as the Court deems proper.

**ON THE SIXTEENTH CLAIM FOR RELIEF, FOR TRADEMARK COUNTERFEITING, AGAINST DEFENDANTS CUSTOMVINE, L18, A W DIRECT, SPELLETICH, AND DOES 1 THROUGH 5:**

A.    For *either (i)* damages in an amount to be determined under 15 U.S.C. § 1117(a), plus "exceptional case" attorney fees; *or, in the alternative (ii)* statutory damages under 15 U.S.C. § 1117(c).

B.    For treble damages and prejudgment interest under 15 U.S.C. § 1117(b).

C.    For injunctive relief under 15 U.S.C. § 1116:

*(i)* prohibiting CustomVine, L18, A W Direct, Spelletich and Does 1 through 5 from violating any right of plaintiff in the COMPASS POINT trademark (U.S.P.T.O. Reg. No. 4,165,358), and from violating 15 U.S.C. § 1125(a), (c), or (d); and

*(ii)* directing CustomVine, L18, A W Direct, Spelletich and Does 1 through 5 to file with the court and serve on plaintiff, within 30 days after the service of the injunction, a report in writing under oath setting forth in detail the manner and form in which each defendant has complied with the injunction.

D.    For such other relief as the Court deems proper.

**ON THE SEVENTEENTH CLAIM FOR RELIEF, FOR UNFAIR COMPETITION, AGAINST DEFENDANTS CUSTOMVINE, L18, A W DIRECT, SPELLETICH, AND DOES 1 THROUGH 5:**

A.    For damages in an amount to be determined under 15 U.S.C. § 1117(a).

60

**COMPLAINT RE BREACH OF CONTRACT, TRADEMARK INFRINGEMENT AND COUNTERFEITING, FALSE ADVERTISING, VICARIOUS INFRINGEMENT AND LIABILITY**

B.     For "exceptional case" attorney fees under 15 U.S.C. § 1117(a).

C.     For injunctive relief under 15 U.S.C. § 1116:

*(i)* prohibiting CustomVine, L18, A W Direct, Spelletich and Does 1 through 5 from violating any right of plaintiff in the COMPASS POINT trademark (U.S.P.T.O. Reg. No. 4,165,358), and from violating 15 U.S.C. § 1125(a), (c), or (d); and

*(ii)* directing CustomVine, L18, A W Direct, Spelletich and Does 1 through 5 to file with the court and serve on plaintiff, within 30 days after the service of the injunction, a report in writing under oath setting forth in detail the manner and form in which each defendant has complied with the injunction.

D.     For such other relief as the Court deems proper.

## ON THE EIGHTEENTH CLAIM FOR RELIEF, FOR FALSE ADVERTISING, AGAINST DEFENDANTS CUSTOMVINE, L18, A W DIRECT, SPELLETICH, AND DOES 1 THROUGH 5:

For injunctive relief prohibiting CustomVine, L18, A W Direct, Spelletich and Does 1 through 5 from using the COMPASS POINT trademark in violation of California Business and Professions Code section 17500.

## ON THE NINETEENTH CLAIM FOR RELIEF, FOR CONTRIBUTORY TRADEMARK INFRINGEMENT, AGAINST DEFENDANTS KEVIN BOYER, CUSTOMVINE AND DOES 6 THROUGH 10:

A.     For damages in an amount to be determined under 15 U.S.C. § 1117(a).

B.     For "exceptional case" attorney fees under 15 U.S.C. § 1117(a).

C.     For such other relief as the Court deems proper.

## ON THE TWENTIETH CLAIM FOR RELIEF, FOR VICARIOUS TRADEMARK INFRINGEMENT, AGAINST DEFENDANTS CUSTOMVINE, L18, A W DIRECT, SPELLETICH, AND DOES 1 THROUGH 5:

A.      For damages in an amount to be determined under 15 U.S.C. §
1117(a).

B.      For "exceptional case" attorney fees under 15 U.S.C. § 1117(a).

C.      For such other relief as the Court deems proper.

**ON THE TWENTY-FIRST CLAIM FOR RELIEF, FOR TRADEMARK INFRINGEMENT, AGAINST DEFENDANTS CUSTOMVINE, L18, A W DIRECT, SPELLETICH, GREGG & GREGG, AND DOES 1-5:**

A.      For damages in an amount to be determined under 15 U.S.C. §
1117(a).

B.      For "exceptional case" attorney fees under 15 U.S.C. § 1117(a).

C.      For injunctive relief under 15 U.S.C. § 1116:

*(i)* prohibiting CustomVine, L18, A W Direct, Spelletich, Gregg & Gregg and Does 1 through 5 from violating any right of plaintiff in the ELEANORA MARIE trademark (U.S.P.T.O. Reg. No. 4,165,358), and from violating 15 U.S.C. § 1125(a), (c), or (d); and

*(ii)* directing CustomVine, L18, A W Direct, Spelletich, Gregg & Gregg and Does 1 through 5 to file with the court and serve on plaintiff, within 30 days after the service of the injunction, a report in writing under oath setting forth in detail the manner and form in which each defendant has complied with the injunction.

D.      For such other relief as the Court deems proper.

**ON THE TWENTY-SECOND CLAIM FOR RELIEF, FOR TRADEMARK COUNTERFEITING, AGAINST DEFENDANTS CUSTOMVINE, L18, A W DIRECT, SPELLETICH, GREGG & GREGG, AND DOES 1 THROUGH 5:**

A.      For *either (i)* damages in an amount to be determined under 15 U.S.C. § 1117(a), plus "exceptional case" attorney fees; *or, in the alternative (ii)* statutory damages under 15 U.S.C. § 1117(c).

**COMPLAINT RE BREACH OF CONTRACT, TRADEMARK INFRINGEMENT AND COUNTERFEITING, FALSE ADVERTISING, VICARIOUS INFRINGEMENT AND LIABILITY**

B.     For treble damages and prejudgment interest under 15 U.S.C. § 1117(b).

C.     For injunctive relief under 15 U.S.C. § 1116:

*(i)* prohibiting CustomVine, L18, A W Direct, Spelletich, Gregg & Gregg and Does 1 through 5 from violating any right of plaintiff in the ELEANORA MARIE trademark (U.S.P.T.O. Reg. No. 4,165,358), and from violating 15 U.S.C. § 1125(a), (c), or (d); and

*(ii)* directing CustomVine, L18, A W Direct, Spelletich, Gregg & Gregg and Does 1 through 5 to file with the court and serve on plaintiff, within 30 days after the service of the injunction, a report in writing under oath setting forth in detail the manner and form in which each defendant has complied with the injunction.

D.     For such other relief as the Court deems proper.

**ON THE TWENTY-THIRD CLAIM FOR RELIEF, FOR UNFAIR COMPETITION, AGAINST DEFENDANTS CUSTOMVINE, L18, A W DIRECT, SPELLETICH, GREGG & GREGG, AND DOES 1 THROUGH 5:**

A.     For damages in an amount to be determined under 15 U.S.C. § 1117(a).

B.     For "exceptional case" attorney fees under 15 U.S.C. § 1117(a).

C.     For injunctive relief under 15 U.S.C. § 1116:

*(i)* prohibiting CustomVine, L18, A W Direct, Spelletich, Gregg & Gregg and Does 1 through 5 from violating any right of plaintiff in the ELEANORA MARIE trademark (U.S.P.T.O. Reg. No. 4,165,358), and from violating 15 U.S.C. § 1125(a), (c), or (d); and

*(ii)* directing CustomVine, L18, A W Direct, Spelletich, Gregg & Gregg and Does 1 through 5 to file with the court and serve on plaintiff, within 30 days after the service of the injunction, a report in writing under oath setting forth

**COMPLAINT RE BREACH OF CONTRACT, TRADEMARK INFRINGEMENT AND COUNTERFEITING, FALSE ADVERTISING, VICARIOUS INFRINGEMENT AND LIABILITY**

1    in detail the manner and form in which each defendant has complied with the
2    injunction.

3         D.    For such other relief as the Court deems proper.

4         **ON THE TWENTY-FOURTH CLAIM FOR RELIEF, FOR FALSE**
5    **ADVERTISING, AGAINST DEFENDANTS CUSTOMVINE, L18, A W**
6    **DIRECT, SPELLETICH, GREGG & GREGG, AND DOES 1 THROUGH 5:**

7         For injunctive relief prohibiting CustomVine, L18, A W Direct, Spelletich,
8    Gregg & Gregg and Does 1 through 5 from using the ELEANORA MARIE
9    trademark in violation of California Business and Professions Code section 17500.

10        **ON THE TWENTY-FIFTH CLAIM FOR RELIEF, FOR**
11    **CONTRIBUTORY TRADEMARK INFRINGEMENT, AGAINST**
12    **DEFENDANTS KEVIN BOYER, CUSTOMVINE AND DOES 6 THROUGH**
13    **10:**

14        A.    For damages in an amount to be determined under 15 U.S.C. §
15    1117(a).

16        B.    For "exceptional case" attorney fees under 15 U.S.C. § 1117(a).

17        C.    For such other relief as the Court deems proper.

18    **ON THE TWENTY-SIXTH CLAIM FOR RELIEF, FOR VICARIOUS**
19    **TRADEMARK INFRINGEMENT, AGAINST DEFENDANTS**
20    **CUSTOMVINE, L18, A W DIRECT, SPELLETICH, GREGG & GREGG,**
21    **AND DOES 1 THROUGH 5:**

22    / / /
23    / / /
24    / / /
25    / / /
26    / / /
27    / / /
28    / / /

**COMPLAINT RE BREACH OF CONTRACT, TRADEMARK INFRINGEMENT AND
COUNTERFEITING, FALSE ADVERTISING, VICARIOUS INFRINGEMENT AND LIABILITY**

A.     For damages in an amount to be determined under 15 U.S.C. § 1117(a).

B.     For "exceptional case" attorney fees under 15 U.S.C. § 1117(a).

C.     For such other relief as the Court deems proper.

Dated: December   7, 2016       SCHLEY LOOK GUTHRIE & LOCKER LLP

By: __

     Brett Locker
     Attorneys for plaintiff,
     Turn Key Wine Brands LLC

**COMPLAINT RE BREACH OF CONTRACT, TRADEMARK INFRINGEMENT AND COUNTERFEITING, FALSE ADVERTISING, VICARIOUS INFRINGEMENT AND LIABILITY**

1

## DEMAND FOR JURY TRIAL

     Plaintiff hereby demands trial by jury.

Dated: December  7 , 2016       **SCHLEY LOOK GUTHRIE & LOCKER LLP**

By: __

     Brett Locker
     Attorneys for plaintiff,
     Turn Key Wine Brands, LLC

**COMPLAINT RE BREACH OF CONTRACT, TRADEMARK INFRINGEMENT AND COUNTERFEITING, FALSE ADVERTISING, VICARIOUS INFRINGEMENT AND LIABILITY**